## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COLLEEN REILLY**; **BECKY BITER**; and **ROSALIE GROSS**, | ) ) ) | |
| **Plaintiffs**, | ) ) | |
| **v.** | ) ) | **Case No.** _____ |
| **CITY OF HARRISBURG**; **HARRISBURG CITY COUNCIL**; and **ERIC PAPENFUSE**, in his official capacity as Mayor of Harrisburg, | ) ) ) ) ) ) | *Electronically filed* |
| **Defendants**. | ) | |

_____

## VERIFIED COMPLAINT

Plaintiffs Colleen Reilly ("Reilly"), Becky Biter ("Biter"), and Rosalie Gross ("Gross") (collectively, "Plaintiffs"), hereby state this Complaint against Defendants City of Harrisburg, Pennsylvania ("City of Harrisburg"), Harrisburg City Council ("HCC"), and Eric Papenfuse, in his official capacity as Mayor of Harrisburg ("Papenfuse") (together, the "Harrisburg Defendants"), and allege:

## PRELIMINARY STATEMENT

1.     This is a civil rights action brought pursuant to 42 U.S.C. § 1983 challenging the constitutionality, facially and as applied, of City of Harrisburg Ordinance "Interference With Access To Health Care Facilities," Harrisburg City Code §§ 3-371 *et seq.* (hereinafter "the Ordinance"), which creates anti-speech

1

buffer zones restricting free speech on public sidewalks, streets, and other public ways adjacent to health care facilities, including abortion clinics, throughout the City of Harrisburg. In the buffer zones established by the Ordinance, Plaintiffs and others who oppose the practice of abortion may not "knowingly congregate, patrol, picket or demonstrate in a zone extending 20 feet from any portion of any entrance to, exit from, or driveway of a health care facility."

2.    Prior to the enactment of the Ordinance and continuing thereafter, Plaintiffs regularly engaged in peaceful pro-life sidewalk counseling through quiet one-on-one conversations with women and/or their partners, prayer, and distributing life-affirming literature outside of the two abortion clinics in the City of Harrisburg. Through personal conversations and literature, Plaintiffs suggest alternatives to abortion. Plaintiffs continue to engage in their peaceful pro-life sidewalk counseling, prayer, and leafletting outside the abortion clinics in the City of Harrisburg. However, the buffer zones created by the Ordinance essentially preclude Plaintiffs from engaging in the intimate, conversational speech and leafletting with their intended audience. The Ordinance keeps their expressive activities a significant distance from the abortion clinics which substantially limits their speech and prevents their pro-life message and unamplified conversation from being effective.

3.    Accordingly, the Ordinance, on its face and as applied to Plaintiffs, impermissibly restricts free speech activities on public sidewalks, streets, and other

public rights of way which are regarded as traditional public fora, in which speech cannot be prohibited or restricted except in extraordinary circumstances through narrowly tailored regulations supported by compelling governmental interests. The Harrisburg Defendants have no justification for creating scores of anti-speech zones on public property across the City of Harrisburg where free speech rights are at their constitutional zenith, and ample less restrictive alternatives are readily available that do not curtail the speech of law-abiding citizens.

4. This case is directly controlled by a similar fixed buffer zone law struck down as unconstitutional by the United States Supreme Court in *McCullen v. Coakley*, 134 S.Ct. 2518 (2014). The Ordinance was enacted before the *McCullen* case was decided by the Supreme Court, and under that new binding and controlling precedent, it cannot survive legal challenge.

5. The Ordinance also cannot survive the more recent First Amendment decision from the United States Supreme Court in *Reed v. Town of Gilbert*, 135 S.Ct. 2218 (2015), which establishes the controlling definitional framework for content based speech restrictions enacted by government.

6. Absent preliminary and permanent injunctive relief, Plaintiffs and other citizens will continue to suffer irreparable harm to their most cherished rights and liberties protected by the First and Fourteenth Amendments of the United States Constitution. In comparison, the Harrisburg Defendants will suffer no injury from

injunctive relief because there is no government interest in the enforcement of unconstitutional speech restrictions, especially content based restraints that target specific forms of speech and particular messages, as the Ordinance does on its face and as applied. Preliminary and permanent injunctive relief will ensure that robust speech and other constitutionally-protected expressive activities are preserved in the City of Harrisburg.

## JURISDICTION AND VENUE

7.     This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

8.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201-02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

9.     Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because all of the parties reside in this district and all of the acts described in the Complaint occurred in this district.

## IDENTIFICATION OF PARTIES

10.    Plaintiff Reilly is a citizen of the United States and a resident of Lebanon, Pennsylvania.

11.    Plaintiff Biter is a citizen of the United States and a resident of Fayetteville, Pennsylvania.

12.    Plaintiff Gross is a citizen of the United States and a resident of Lancaster, Pennsylvania.

13.    Defendant City of Harrisburg is a municipal corporation existing under the laws and the Constitution of the Commonwealth of Pennsylvania and is a corporate entity capable of suing and being sued.

14.    Defendant City of Harrisburg is responsible for enforcing the Ordinance against Plaintiffs and others within the corporate limits of the City of Harrisburg.

15.    Defendant HCC is vested with the legislative power of the City of Harrisburg, and it enacted the challenged Ordinance on November 13, 2012.

16.    Defendant Papenfuse is the Mayor of the City of Harrisburg and is sued in his official capacity as Mayor of the City of Harrisburg. In his official capacity as Mayor of the City of Harrisburg, Defendant Papenfuse is charged with executing and enforcing the ordinances of the City of Harrisburg, including the challenged Ordinance.

## FACTUAL ALLEGATIONS

### A. The Ordinance Creates Buffer Zones Restricting Protected Speech In The City Of Harrisburg.

17.    On November 13, 2012, the HCC, as the governmental entity vested with the legislative power of the City of Harrisburg, adopted Ordinance No. 12-2012 supplementing the Harrisburg Code of Ordinances, Title 3: Public Safety, Subtitle: General Offenses, Part 3: General Offenses, by adding Chapter 3-371, entitled "Interference With Access To Health Care Facilities." §§ 3-371 *et seq*., *available at* http://ecode360.com/13739606 (last accessed March 23, 2016) (a copy of which is attached hereto as Exhibit "1"). The Ordinance became effective on or about November 23, 2012.

18.    The Ordinance was summarily adopted by the HCC at the behest of Planned Parenthood, an abortion provider who operates an abortion clinic within the City of Harrisburg, to categorically exclude anti-abortion speech around the abortion clinics located in the City of Harrisburg.

19.    The Ordinance includes the following restriction:

No person or persons shall knowingly congregate, patrol, picket or demonstrate in a zone extending 20 feet from any portion of an entrance to, exit from, or driveway of a health care facility.

§ 3-371.4.A.

6

20.     The Ordinance defines "Health care facility" as "any hospital, medical office, physical or psychological therapy facility or clinic licensed by the Commonwealth of Pennsylvania Department of Health."

21.     According to the Pennsylvania Department of Health, there are at least seventy-eight (78) licensed health care facilities in the City of Harrisburg. *See* List of Health Care Facilities, generated via search on Pennsylvania Department of Health website selecting "All" (from "Type of Facility" drop down list of options) and "Harrisburg" (from "City" drop down list of options), *available at* http://sais.health.pa.gov/commonpoc/content/publiccommonpoc/normalSearch.asp (last accessed March 23, 2016) (attached hereto as Exhibit "2").

22.     The Ordinance does not define "congregate," "patrol," "picket," or "demonstrate."

23.     The Ordinance purports to create "buffer zones" around any portion of every entrance, exit, and driveway of every building housing a "health care facility" in the City of Harrisburg.

24.     When a building that houses a health care facility has multiple entrances, exits, or driveways, the Ordinance creates multiple buffer zones, one for each entrance, exit, or driveway.

25.     Thus, the Ordinance creates hundreds of anti-speech zones around the more than 75 licensed health care facilities throughout the City of Harrisburg.

26.     In enacting the Ordinance, the HCC stated its "Findings and Purpose"

in § 3-371.2, as follows:

> A. The Council of the City of Harrisburg recognizes that access to
> health care facilities for the purpose of obtaining medical counseling
> and treatment is important for residents and visitors to the City. City
> Council further recognizes that the exercise of a person's right to protest
> or counsel against certain medical procedures is a First Amendment
> activity that must be balanced against another person's right to obtain
> medical counseling and treatment in an unobstructed manner.
>
> B. The City Council is aware of several instances in which police
> departments across the commonwealth, including the City of
> Harrisburg Bureau of Police, have been called upon to mediate disputes
> between those seeking medical counseling and treatment and those who
> would counsel against their actions in an effort to prevent violent
> confrontations which would lead to criminal charges.
>
> C. In order to promote the health and welfare of City residents and
> visitors to the City's health care facilities, as well as the health and
> welfare of those who may wish to voice their constitutionally protected
> speech outside of such health care facilities, the City finds that the
> limited buffer zones outside of health care facilities established by this
> chapter will ensure that patients have unimpeded access to medical
> services while protecting the First Amendment rights of demonstrators
> to communicate their message.

27.     The Ordinance does not properly accommodate Plaintiffs' and others'

First Amendment rights because the Ordinance has completely abolished free speech

in traditional public fora used for the expression of ideas, debate, and protest—

specifically, public sidewalks and streets adjacent to health care facilities, including

abortion clinics, throughout the City of Harrisburg.

28.     The Ordinance prohibits Plaintiffs and others from effectively reaching their intended audience by prohibiting speech within 20 feet of any portion of every entrance, exit, and driveway to a health care facility, including abortion clinics, in the City of Harrisburg. The Ordinance has made the public sidewalks immediately adjacent to the abortion clinics in Harrisburg inaccessible for pro-life sidewalk counselors and others.

29.     In effect, the anti-speech zones created by the Ordinance keep pro-life speech and messages more than 50 feet away in nearly every direction from the entrance of the two abortion clinics in the City of Harrisburg, and in some instances, more than 70 feet away from the abortion clinics' entrances.

30.     No alternatives short of instituting the anti-speech buffer zones were considered by the HCC before adopting the Ordinance, at the request of Planned Parenthood.

31.     The Ordinance provides no specific instances of violent conduct outside of health care facilities or of patients being hindered, prevented, obstructed, blocked or restricted from receiving health care services in the City of Harrisburg.

32.     Instead, the Ordinance vaguely references that "police departments across the commonwealth, including the City of Harrisburg Bureau of Police, have been called upon to mediate disputes between those seeking medical counseling and

treatment and those who would counsel against their actions in an effort to prevent violent confrontations which would lead to criminal charges." § 3-371.2.B.

33.   The Ordinance creates an exception to the anti-speech zones for "police and public safety officers, fire and rescue personnel, or other emergency workers in the course of their official business or to authorized security personnel, employees or agents of the hospital, medical office or clinic engaged in assisting patients and other persons to enter or exit the hospital, medical office, or clinic." § 3-371.4.A.

34.   Thus, the exemption for employees extends to abortion clinic employees or agents who escort, direct, or encourage patients to enter the abortion clinic, and the exemption immunizes any pro-abortion speech those persons make inside the restricted zones to the patients or to sidewalk counselors outside the abortion clinic.

35.   The Ordinance purports to be content neutral by stating that "[t]he provisions of this section shall apply to all persons equally regardless of the intent of their conduct or the content of their speech." § 3-371.4.B.

36.   In fact, however, as a result of the exception, employees and agents of health care facilities, who would be supportive of the abortions occurring at the facilities, are permitted to "congregate, patrol, picket and demonstrate" within the buffer zones and therein engage in expressive activity that supports the activities of the health care facility, including abortions at an abortion clinic, while Plaintiffs and

others are prohibited from engaging in expressive activity, including, *inter alia*, speech that is critical of the procedures being undertaken at the abortion clinics.

37.    None of the zones created by the Ordinance are designated by physical markings of any kind. Thus, no person, including law enforcement officials, can readily determine how far the zones extend. As a result, dependent upon how the anti-speech zones are measured, the reach of the buffer zone extends into the street.

38.    Upon information and belief, the Harrisburg Defendants have selectively enforced the Ordinance by restricting speech only in zones surrounding abortion clinics but have not restricted speech nor attempted to restrict speech outside of other health care facilities that are also covered by the Ordinance.

39.    The Ordinance penalizes those persons who knowingly congregate, petition, picket or demonstrate within 20 feet of any portion of an entrance, exit or driveway of any health care facility in the City of Harrisburg "by a fine of at least $50 for the first offense; a fine of at least $150 for a second offense within five years; and a fine of $300 for a third offense within five years. For fourth and subsequent offenses within five years the fine shall not be less than $300 and/or imprisonment for not more than 30 days." § 3-371.99.

### B. Plaintiffs Engage In Protected Speech That Is Now Restricted By The Buffer Zones Created By The Ordinance.

40.    Abortion is practiced in the City of Harrisburg at the Harrisburg Medical Center operated by Planned Parenthood at 1514 North Second Street,

Harrisburg, Pennsylvania 17102 (hereinafter, the "Planned Parenthood Clinic"), and the Hillcrest Women's Health Center at 2709 North Front Street, Harrisburg, Pennsylvania 17110 (hereinafter, the "Hillcrest Clinic").

41.    The Planned Parenthood Clinic and Hillcrest Clinic each constitute a "health care facility" within the definition of the Ordinance as a medical facility or clinic licensed by the Commonwealth of Pennsylvania Department of Health. *See also* Exhibit 2 (identifying Hillcrest and Planned Parenthood Clinics as licensed abortion facilities in the City of Harrisburg).

42.    The Planned Parenthood Clinic is a one-story building which sits right next to a main roadway. The clinic's building is similar to a storefront, with the entrance right on the public sidewalk. Facing the exterior of the building, the clinic's driveway is directly to the right of the building and leads to a parking lot in the rear of the building. Running parallel to the clinic's front entrance are a public sidewalk and the roadway. True and accurate pictures of the exterior of the Planned Parenthood Clinic are collectively attached to this Complaint as Exhibit "3."

43.    The Hillcrest Clinic is a two-story building that sits on North Front Street, a three-lane thoroughfare. The building is set back on the property away from the public sidewalk. Facing the exterior of the building, the clinic's driveway is directly to the left of the building and leads to a parking lot in the rear of the building. Running parallel to the property on which the Hillcrest Clinic sits are a public

sidewalk and roadway. True and accurate pictures of the exterior of the Hillcrest Clinic are collectively attached to this Complaint as Exhibit "4."

44.    No physical markings demarcate the anti-speech buffer zones surrounding the entrances, exits, and driveways of the Planned Parenthood and Hillcrest Clinics.

45.    At the Planned Parenthood Clinic, the buffer zones created by the Ordinance include the public sidewalk adjacent to the clinic. In effect, the buffer zones prohibit speech on a stretch of public sidewalk immediately adjacent to the clinic that extends greater than 70 feet.

46.    The buffer zones established by the Ordinance prohibit sidewalk counselors from standing on any public sidewalk space in front of the Planned Parenthood Clinic, which prevents any sidewalk counselors from peacefully engaging in quiet, personal conversation with any clinic patients who arrive at the abortion clinic by vehicle and get dropped off at the curb and sidewalk immediately in front of the clinic, including those patients who wish to receive information from sidewalk counselors.

47.    In front of the Planned Parenthood Clinic, the unmarked boundary lines for the multiple buffer zones created by the Ordinance extend into the street, dependent upon how the buffer zone is measured from the entrance. The street is a patently unsafe place to stand, and thus, sidewalk counselors must stand elsewhere

to protect their own safety, which would not be necessary if the anti-speech zone did not exist.

48.     On the side of the street where the Planned Parenthood Clinic is situated, the unmarked boundary lines for the buffer zones created by the Ordinance are directly in front of someone's home and more than 50 feet from the clinic's entrance in one direction, and, in another direction, directly in front of another business and beyond a collection of trees and bushes that almost totally obstruct sidewalk counselors' view of the abortion clinic's entrance and simultaneously block them from view by anyone entering the clinic. Neither of these locations is an acceptable alternative position for sidewalk counselors to stand and engage in quiet, personal conversations and peaceful leafletting.

49.     The buffer zone created by the Ordinance surrounding the driveway at the Planned Parenthood Clinic absolutely prevents sidewalk counselors from standing close enough to the driveway to hand out life-affirming literature to individuals arriving at the clinic by vehicle.

50.     The buffer zones created by the Ordinance place sidewalk counselors far away from persons entering the Planned Parenthood Clinic and prohibit them from speaking in a conversational tone with persons entering the clinic, or distributing pro-life literature, or even distinguishing between abortion clinic visitors and pedestrians. These anti-speech zones essentially prevent sidewalk counselors

from even starting a conversation with persons entering the Planned Parenthood Clinic without raising their voice.

51. At the Hillcrest Clinic, the buffer zones created by the Ordinance include the public sidewalk adjacent to property on which the clinic sits. In effect, the buffer zones prohibit speech on a stretch of public sidewalk adjacent to the property on which the clinic sits that extends greater than 50 feet.

52. The buffer zones established by the Ordinance prohibit sidewalk counselors from standing on a significant stretch of public sidewalk space in front of the Hillcrest Clinic, which prevents any sidewalk counselors from peacefully engaging in quiet, personal conversation with any clinic patients who arrive at the abortion clinic by vehicle and get dropped off at the curb and sidewalk immediately in front of the clinic, including those patients who wish to receive information from sidewalk counselors.

53. In front of the Hillcrest Clinic, the unmarked boundary lines for the buffer zones created by the Ordinance force counselors to stand on public sidewalk space in front of another property or at the very edge of the abortion clinic's property. Neither of these locations is an acceptable alternative position for sidewalk counselors to stand and engage in quiet, personal conversations and peaceful leafletting.

54.     The buffer zone created by the Ordinance surrounding the driveway at the Hillcrest Clinic prevents sidewalk counselors from standing close enough to the driveway to hand out pro-life literature to individuals arriving at the clinic by vehicle.

55.     The buffer zones created by the Ordinance place sidewalk counselors far away from persons entering the Hillcrest Clinic and prohibits them from speaking in a conversational tone with persons entering the clinic or distributing life-affirming literature, or even distinguishing between abortion clinic visitors and pedestrians. These anti-speech zones essentially prevent sidewalk counselors from even starting a conversation with persons entering the Hillcrest Clinic without raising their voice.

56.     The effect of the multiple buffer zones at the Hillcrest Clinic keep sidewalk counselors more than 70 feet from the entrance to the clinic, no matter where they stand. None of the locations is an acceptable position for sidewalk counselors to stand and engage in quiet, personal conversations and peaceful leafletting.

57.     The Planned Parenthood and Hillcrest Clinics practice abortion and perform abortion procedures on a weekly basis. The Planned Parenthood Clinic performs chemical abortions, and the Hillcrest Clinic performs surgical abortions.

58.     Plaintiffs are Christian sidewalk counselors and pro-life advocates who are opposed to the practice of abortion on the basis of their sincerely held religious beliefs that it is the deliberate and intentional destruction of innocent human life.

59.     Plaintiffs' religious beliefs compel them to counsel women about the true nature of abortion, to offer them alternatives to killing their unborn children, and to provide reasons for choosing life. Plaintiffs' religious beliefs also compel them to counsel women about the dangers to their health, safety, and well-being when they undergo an abortion, and other sociological dangers as well.

60.     Plaintiffs, together with several others, have regularly maintained a presence on the public sidewalks and other public ways adjoining the Planned Parenthood and Hillcrest Clinics (in some instances for many years) in order to peaceably express their heartfelt message that abortion is the killing of a human child, to offer alternatives to those seeking abortions, and to pray both for, and with, the expectant mothers and for their unborn children.

61.     Plaintiffs have regularly engaged in free speech on the public sidewalks and walkways outside of the Planned Parenthood and Hillcrest Clinics for years and prior to adoption of the Ordinance did not observe any conduct which created any confrontation or impeded patients' access to the abortion clinics.

62.     Through sidewalk counseling, Plaintiffs seek to have quiet and personal one-on-one conversations with, and to offer assistance and information to, women

considering abortion so that they can make a more informed decision, in hopes that the expecting mothers (or couples) will change their minds and keep their babies.

63.     Plaintiffs' assistance also includes providing women (or couples) with pamphlets describing local pregnancy resources, such as phone numbers of various abortion-alternative providers, and health information, such as the negative effects of an abortion and pictures of fetal development. Plaintiffs also pray for, and peacefully express a message of compassionate and caring support to, those entering and exiting the clinic.

64.     Plaintiffs do not desire to engage in loud confrontations or any kind of harassment. Plaintiffs believe the most effective way of connecting with women and couples facing unplanned pregnancies and/or considering abortions is to engage in peaceful one-on-one conversations in a quiet tone of voice with a friendly demeanor, and to provide factual information in leaflets and handbills.

65.     Plaintiffs' experience also demonstrates that the most effective locations from which to engage in their peaceful, pro-life sidewalk counseling, prayer, and leafletting is on the public sidewalks immediately outside and adjacent to the abortion clinics, and near the driveways. These are the exact areas of public space where Plaintiffs and other sidewalk counselors now cannot stand due to the Ordinance.

66.     Plaintiffs have never blocked or impeded any pedestrian, clinic patient, clinic employee or anyone else during their sidewalk counseling.

67.     Before the Ordinance was enacted, Plaintiffs Reilly and Gross would interact with abortion clinic visitors in a more meaningful way inside the public areas now prohibited, because they had the opportunity to speak with them face-to-face. Those public areas and walkways were not off limits for Plaintiffs and other sidewalk counselors.

68.     Plaintiffs are aware of multiple persons who have changed their minds and decided against having an abortion after personally counseling them and/or providing them with pro-life literature. As such, in multiple instances, their speech within the public areas they can no longer enter was, literally, the difference between life and death for several unborn children.

69.     Plaintiff Reilly is a regular sidewalk counselor outside the Hillcrest Clinic, and has been for more than ten years. She has also occasionally been a pro-life counselor at the Planned Parenthood Clinic. She primarily counsels on her days off from work in the public school system, during the summer months, and during the annual "40 Days for Life" campaigns.

70.     Plaintiff Reilly has no criminal history, and has never been subject to any injunctions in connection with her sidewalk counseling outside the Harrisburg abortion clinics.

71.   Prior to the enactment of the Ordinance, Reilly would generally stand on the public sidewalk next to the driveway entrance to the Hillcrest Clinic to distribute literature and speak to the people entering the clinic on foot or in cars moving down the driveway. She was often able to give out three (3) to seven (7) pieces of literature per day in that manner, and have multiple personal conversations with individuals entering the Hillcrest Clinic each day she counseled.

72.   After the enactment of the Ordinance, Reilly was forced to move outside the public areas where she normally stood, and more than 70 feet from the entrance to the Hillcrest Clinic and 20 feet from the driveway, which has significantly hindered and impeded her ability to counsel women seeking abortions and distribute pro-life literature. The distance makes it impossible for Reilly to hand literature to cars entering the driveway, and hinders her ability to engage in one-on-one personal conversations, even with those who want to receive her information and counseling. Moreover, Reilly cannot reach persons entering the driveway on foot without raising her voice, which, in her experience, may alarm the women and make them less receptive to her message.

73.   As a result of the Ordinance, on the days she counsels at the Hillcrest Clinic, Reilly now has less than half of the number of personal conversations she used to have, and distributes less than half of the pieces of literature that she used to

distribute before the enactment of the Ordinance. There are now days when she has no conversations and distributes no literature.

74.     Plaintiff Biter is a regular sidewalk counselor outside the Hillcrest and Planned Parenthood Clinics. She has counseled approximately three days per week outside the Hillcrest Clinic for the last year, and approximately one day per week outside the Planned Parenthood Clinic.

75.     Plaintiff Biter has no criminal history, and has never been subject to any injunctions in connection with her sidewalk counseling outside the Hillcrest Clinic.

76.     Approximately twenty-five years ago, Biter had two abortions and, for many years thereafter, suffered utter grief, anguish and guilt until she found healing in the love, mercy, and forgiveness of God. She now oversees a pro-life religious ministry in Harrisburg, from which she provides pro-life counseling to women considering an abortion and pro-life counseling to women who have experienced an abortion, as she did. In her counseling outside the Harrisburg abortion clinics, Biter desires to share her personal experience with abortion in a one-on-one setting and also provide a plethora of pro-life literature to women considering abortions that explains the negative and detrimental health effects resulting from abortions.

77.     Because of the nature of Biter's counseling, the Ordinance prohibits her from being close enough to women who are entering the Harrisburg abortion clinics

to share her personal testimony. The anti-speech zones around the entrances, exits, and driveways of the Harrisburg abortion clinics created by the Ordinance prevents her from appropriately sharing her message of love, mercy, and forgiveness with those who are entering or exiting the abortion clinics. Without the Ordinance, she would be able to share her loving message and pro-life views motivated by her sincerely held religious beliefs with many more individuals who are entering and exiting the Harrisburg abortion clinics.

78.    Plaintiff Gross is a regular sidewalk counselor outside the Planned Parenthood Clinic, and has been since approximately July 2012. She primarily counsels on the days when the clinic performs its weekly abortions.

79.    Plaintiff Gross has no criminal history, and has never been subject to injunctions in connection with her sidewalk counseling outside the Planned Parenthood Clinic.

80.    Prior to the enactment of the Ordinance, Gross' routine when counseling was to stand still on the public sidewalk adjacent to the front of the entrance to Planned Parenthood Clinic, and try to speak with the women and couples and offer them literature as they walked into the building.

81.    Before the Ordinance took effect, Gross could speak to the abortion clinic visitors from a close conversational distance and volume. Gross could reach out to hand them literature when they walked by her. As many as eight out of ten

women would accept pro-life literature, and, on average, she would usually have at least one or two personal conversations with clinic visitors she counseled at the Planned Parenthood Clinic.

82.     Since the Ordinance took effect, Gross is forced to stand much farther away from the entrance to the Planned Parenthood Clinic and, as a result, abortion clinic visitors must come all the way to her in the unrestricted area to take her pro-life literature and to engage in a conversation. In her experience, unless her proffer of literature is placed near their hands, most passersby will not make the effort to take it.

83.     Since the Ordinance has forced Gross to stand far from the clinic's entrance, very few woman have ever walked all the way over to her to take literature or to speak with her. At most, only one out of ten women will now take her literature, and she has significantly fewer conversations because she is now forced outside the normal pathway of the abortion clinic visitors, nearly 50 feet from the entrance. There are now days when she has no conversations and distributes no literature. She must raise her voice in order for visitors to hear her, but she is afraid that doing so may alarm the women or make them feel uncomfortable.

84.     The enactment of the Ordinance has made a big difference in Gross' ability to engage in personal conversations and leafletting, and has significantly

hampered her ability to share her message and handout out literature to women who are interested in knowing all of their options and the health risks involved.

85.    Abortion clinic employees or agents, standing inside the restricted zones, regularly threaten to call the Harrisburg police if Plaintiffs or other sidewalk counselors physically enter the unmarked restricted zones created by the Ordinance.

86.    On occasion, Harrisburg police officers have come to the abortion clinics while Plaintiffs engaged in their peaceful pro-life sidewalk counseling, prayer, and leafletting. Upon information and belief, the Harrisburg police officers appeared at the abortion clinics based upon phone calls made by abortion clinic employees or agents who disagree with Plaintiffs' pro-life messages and viewpoints and are trying to chill Plaintiffs' speech and expressive activity.

87.    The Harrisburg police officers who appeared at the abortion clinics while Plaintiffs were present have never issued a citation to any of Plaintiffs, or any other sidewalk counselors who were also present at the same time, based upon the Ordinance. Each time a Harrisburg police officer has appeared, Plaintiffs, or any other sidewalk counselors who were also present at the same time, have been found to be in compliance with the Ordinance.

88.    However, the presence of these Harrisburg police officers – either from responding to phone calls by abortion clinic employees or agents, or on their drive-by patrols past the abortion clinics – creates a reasonable belief in Plaintiffs that the

Ordinance will be enforced against them if they engage in their peaceful pro-life sidewalk counseling, prayer, and leafletting inside the unmarked buffer zone established by the Ordinance.

89.     On one occasion where the police appeared, a Harrisburg police officer told Plaintiff Reilly that there was a 25 to 30-foot buffer zone around the Planned Parenthood Clinic, and that the sidewalk adjacent to the clinic is not considered a public place except for the purpose of passing through the area. Due to this show of force, Plaintiff Reilly moved outside the area indicated by the officer.

90.     On another occasion where the police appeared, a Harrisburg police officer angrily demanded that Plaintiff Gross give her name and home address, even though she was following the law. Plaintiff Gross gave the officer the information to avoid unnecessary confrontation.

91.     On several occasions, individuals have threatened to call the police on Plaintiff Gross, even though she was following the Ordinance. These threats were always unsettling to her because the Harrisburg police might show up at any time and confront her because persons in Harrisburg's abortion clinics did not like her pro-life speech.

92.     Plaintiffs seek to refrain from entering within the prohibited zones out of fear that they would be arrested, fined and incarcerated for engaging in their pro-life and peaceful sidewalk counseling inside the zones.

93.    The zones created by the Ordinance severely restrict Plaintiffs' ability to engage in sidewalk counseling, prayer, leafleting, and other expressive activities in such a manner as to effectively censor their pro-life message and prevent Plaintiffs from sharing their message with women who are entering the abortion clinics in the City of Harrisburg.

94.    The Ordinance has cut off Plaintiffs' and other sidewalk counselors' abilities to communicate with their intended audience and has greatly reduced their meaningful opportunities to speak with women seeking abortions.

95.    Plaintiffs consider it essential to their message to engage in sidewalk counseling with women, which requires engaging in close, calm, personal conversations with women entering the Planned Parenthood and Hillcrest Clinics. Their message of care, support and hope cannot be effectively communicated by raising their voice and yelling across a street, holding signs or using sound amplification equipment.

96.    The Ordinance on its face and as applied forecloses Plaintiffs and others from reaching their intended audience of both women seeking abortions and the adults who accompany them into the clinic by completely prohibiting Plaintiffs' speech within 20 feet from any portion of every entrance to, exit from, and driveway of every health care facility, including the abortion clinics, in the City of Harrisburg.

97.   The anti-speech zones created by the Ordinance make it all but impossible to initiate close, personal conversations or to pray with people visiting the abortion clinics, in particular, women seeking abortions. The Ordinance has caused these intimate conversations to be far less frequent and, as a result, the pro-life message of Plaintiffs substantially less successful.

98.   The anti-speech zones created by the Ordinance make it substantially more difficult, if not impossible, to distribute literature to patients.

99.   Plaintiffs' sidewalk counseling and leafletting approach can only be communicated through close, caring, and personal conversations.

100.   The buffer zones created by the Ordinance make it impossible for Plaintiffs and others to distinguish between patients and pedestrians traveling near or to the health care facilities.

101.   Plaintiffs have continued, and will continue, to go to the abortion clinics to counsel women seeking abortion and distribute pro-life literature.

102.   Plaintiffs desire to engage in peaceful sidewalk counseling, prayer, and leafletting in the public areas within the buffer zones established by the Ordinance but fear legal consequences under the Ordinance for doing so, including fines, arrest, prosecution, and incarceration.

103.   The penalties under the Ordinance substantially burden Plaintiffs' speech and religious exercise.

27

104.   The anti-speech zones created by the Ordinance restrict free speech and leafletting on public sidewalks, streets, and other public ways outside an untold number of buildings with dentist offices, eye doctors, chiropractors, and other health services throughout the City of Harrisburg.

105.   The anti-speech zones created by the Ordinance restrict the freedom of speech of many other citizens besides Plaintiffs.

106.   The Ordinance chills the speech of Plaintiffs and others by threatening penalties and jail time for violations of the Ordinance.

107.   All of the acts of the Harrisburg Defendants, their officers, agents, servants, and employees, as alleged herein, were conducted under color and pretense of the statutes, ordinances, regulations, policies, practices, customs, and usages of the City of Harrisburg.

108.   The loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury.

109.   The public sidewalks and streets are traditional public fora for purposes of speech and other expressive activities protected by the First and Fourteenth Amendments to the United States Constitution.

110.   The right to engage in peaceful expressive activity, assembly, and association in quintessential public fora is guaranteed by the Free Speech and Assembly Clauses of the First Amendment to the United States Constitution.

28

111.   The right to peacefully distribute literature in quintessential public fora is guaranteed by the Free Speech and Free Press Clauses of the First Amendment to the United States Constitution.

112.   The right to hold sincere religious beliefs on abortion and thereby to be compelled to communicate views on abortion to others in a caring, conversational and compassionate manner, and to pray with and share the good news of Jesus Christ with those who are going through crises, including unplanned pregnancies, is religious exercise protected by the Free Speech and Free Exercise Clauses of the First Amendment to the United States Constitution.

113.   The First Amendment protects the right of every citizen to reach the minds of willing listeners, and to do so there must be an opportunity to win their attention.

114.   Plaintiffs' expressive activities are constitutionally protected efforts to inform the citizenry regarding political, moral, and religious issues.

115.   There is no right to be free of unwelcome speech on the public sidewalks, streets, and other public ways while seeking entrance to or exit from abortion clinics.

116.   The fact that certain messages may be offensive to their recipients does not deprive them of constitutional protection.

117.   The right to receive information is guaranteed by the First and Fourteenth Amendments to the United States Constitution.

118.   The Ordinance infringes the rights of willing recipients to receive literature and oral communications and therefore violates the First and Fourteenth Amendments to the United States Constitution.

119.   The Ordinance chills and deters fundamental constitutional rights of Plaintiffs and third parties.

120.   Plaintiffs have suffered, are suffering, and, absent injunctive relief, will continue to suffer irreparable injury to their constitutional rights from the Harrisburg Defendants' past actions and the threat of future application of the Ordinance to Plaintiffs.

121.   Plaintiffs have no adequate remedy at law to correct the continuing deprivations of their most cherished constitutional liberties resulting from the existence, enforcement, and threat of enforcement of the Ordinance.

## COUNT I — VIOLATION OF THE RIGHT TO FREEDOM OF SPEECH UNDER THE UNITED STATES CONSTITUTION

122.   Plaintiffs reallege all matters set forth in paragraphs 1-121 and incorporate them herein as if set forth in full.

123.   Public sidewalks and streets are quintessential public fora for speech.

124.   The Harrisburg Defendants' ability to restrict speech in public fora is extremely limited.

125.   The Ordinance is a content based restriction on speech.

126.   On its face, the Ordinance unconstitutionally defines regulated speech by particular subject matter, and by its function or purpose.

127.   As a content based speech restriction, the Ordinance does not serve a compelling state interest and is not the least restrictive means of achieving the Harrisburg Defendants' asserted interest.

128.   The Ordinance creates an unconstitutional content and viewpoint based restriction on speech in that it was enacted and is applied so as to restrict pro-life speech and pro-life messages in traditional public fora while permitting speech supportive of abortion and critical of the pro-life message being communicated by Plaintiffs, and speakers not disfavored by the City of Harrisburg.

129.   The Ordinance is also an unconstitutional content and viewpoint based restriction on speech because its stated findings and purpose establish a clear intent to restrict speech expressing views that do not support abortions.

130.   The Ordinance is also an unconstitutional content and viewpoint based restriction on speech because it exempts activities, including the speech, of employees and agents of health care facilities who are assisting patients in the zones where speech is otherwise prohibited.

131.   The Ordinance is also an unconstitutional content based restriction because the content of a person's speech must be examined in order to determine if it is prohibited.

132.   The Ordinance burdens substantially more speech than is necessary to achieve any substantial and legitimate governmental interest.

133.   The Ordinance is not a valid or reasonable time, place and manner regulation of free speech.

134.   The Ordinance is not narrowly tailored.

135.   The Ordinance does not serve a compelling, substantial, significant, or even legitimate or rational government interest which justifies the Ordinance's restrictions on speech in traditional public fora.

136.   The Ordinance does not leave open ample alternative channels of communication for Plaintiffs to engage in peaceful sidewalk counseling, leafletting and other expressive activities.

137.   There exist numerous alternative remedial measures, less restrictive of speech than the Ordinance, which the Harrisburg Defendants could have taken but did not attempt to take, and can still take, in order to protect their stated governmental interests.

138.   The Ordinance, on its face and as applied, imposes an unconstitutional restriction on Plaintiffs' constitutionally protected free speech in traditional public

fora, as secured by the First and Fourteenth Amendments to the United States Constitution.

139.   The Ordinance is overbroad on its face and as applied because it prohibits speech and expressive activities of Plaintiffs and third parties not before the Court in the public areas restricted by the Ordinance.

140.   The Ordinance is overbroad on its face and as applied because it prohibits speech and expressive activities at any "health care facility," of which there are more than 75 such licensed facilities in the City of Harrisburg.

141.   The Ordinance is overbroad on its face and as applied because it causes Plaintiffs and third parties not before the Court to refrain from constitutionally protected speech or expression.

142.   The Ordinance is overbroad on its face and as applied because it sweeps within its reach a substantial amount of constitutionally protected speech by prohibiting an individual from congregating, patrolling, picketing, or demonstrating on a public sidewalk, street, or other public way within 20-feet of any portion of every entrance, exit and driveway of every building housing a health care facility in the City of Harrisburg.

143.   The Ordinance is also overbroad on its face because it does not define the forms of speech that it purports to prohibit within the restricted areas and therefore vests unbridled discretion in government officials and law enforcement

authorities tasked with enforcing the Ordinance, to determine what speech is restricted by the Ordinance and what expressive activity is prohibited.

144.   The Ordinance is also overbroad on its face and as applied because it prohibits expressive activities in traditional public fora surrounding businesses and other establishments that are part of multi-use buildings which house health care facilities.

145.   The Ordinance, both on its face and as applied, is impermissibly vague.

146.   The Ordinance is unconstitutionally vague because it does not adequately advise, notify, or inform persons subject to prosecution under the Ordinance of its requirements.

147.   The Ordinance is unconstitutionally vague because it lacks the clarity required of restrictions on protected speech and it fails to give fair notice to citizens on what it prohibits.

148.   The Ordinance is unconstitutionally vague because it lacks any standards or criteria to impose speech zones under the Ordinance.

149.   The Ordinance is unconstitutionally vague because it does not define "congregate," "patrol," "picket," or "demonstrate."

150.   The Ordinance is unconstitutionally vague because it does not provide any minimal standards or criteria to guide those charged with enforcing it (*i.e.*, government officials and law enforcement) and thus gives them unbridled discretion

to determine what speech activities are, and are not, permissible within the zones created by the Ordinance.

151.   As construed and interpreted by the Harrisburg Defendants, the Ordinance leaves Plaintiffs and third parties not before the Court seeking to exercise their First Amendment rights to guess at its meaning, leaves police officers to differ as to its application, confers unfettered discretion upon its enforcers, and necessarily entrusts lawmaking to the moment-to-moment judgment of the police officers on their beat.

152.   The Ordinance authorizes and encourages arbitrary and discriminatory enforcement, without establishing standards to guard against wrongful suppression of First Amendment rights.

153.   The Ordinance is also discriminatory and an unconstitutional content and viewpoint based restriction on its face and as applied, because employees and agents of health care facilities who engage in pro-abortion speech are permitted to speak within the buffer zones, but Plaintiffs and other third parties not before the Court are prohibited from engaging in their speech and pro-life messages in the same zones.

154.   The Ordinance is also discriminatory and an unconstitutional content and viewpoint based restriction as applied, because it is selectively enforced only at

the abortion clinics located in the City of Harrisburg, but not at other health care facilities in the City of Harrisburg.

155.   The Ordinance is also discriminatory and an unconstitutional content and viewpoint based restriction because the Harrisburg Defendants prohibit Plaintiffs from engaging in any pro-life speech within the 20-foot buffer zones around every entrance, exit, and driveway to abortion clinics, or even from being within that zone at all, while at the same time permitting abortion clinic employees and agents to congregate, patrol, picket and demonstrate within that zone and to engage in pro-abortion education, counseling, and demonstrating while there.

156.   The Ordinance creates an impermissible prior restraint on constitutionally protected speech because it restricts speech in advance of expression in the public sidewalks and streets outside health care facilities, and other businesses and establishments, but provides no criteria to guide decision-makers in determining what speech is permissible.

157.   The Ordinance imposes an impermissible prior restraint on the distribution of printed expression that is unconstitutional on its face and as applied because it contains no guidelines or criteria to guide decision-makers on what literature may permissibly be distributed.

158.   The Ordinance forecloses Plaintiffs and third parties from engaging in any First Amendment activities within the zone around the abortion clinics.

159.   The Ordinance forecloses Plaintiffs' and third parties' ability to orally communicate in a normal conversational tone and from a normal conversation distance with both willing and unwilling listeners located within the zone around the abortion clinics.

160.   The Ordinance forecloses Plaintiffs and third parties from standing within the zone near the path of oncoming pedestrians and other individuals and proffering their material.

161.   The Ordinance effectively forecloses Plaintiffs' and third parties' ability to distribute literature to both willing and unwilling listeners located within the zone around the abortion clinics.

162.   As a direct and proximate result of the Harrisburg Defendants' actions, policies, practices, and customs as alleged herein, Plaintiffs are chilled and deprived of their rights to free speech.

163.   Plaintiffs have suffered, are suffering, and will continue to suffer irreparable harm to their First Amendment rights as a direct result of the Harrisburg Defendants' conduct and the existence, enforcement, and threat of enforcement of the Ordinance.

WHEREFORE, Plaintiffs respectfully pray for relief against the Harrisburg Defendants as hereinafter set forth in the prayer for relief.

## COUNT II — VIOLATION OF THE RIGHT TO THE FREE EXERCISE OF RELIGION UNDER THE UNITED STATES CONSTITUTION

164.   Plaintiffs reallege all matters set forth in paragraphs 1-121 and incorporate them herein as if set forth in full.

165.   Plaintiffs have sincerely held religious beliefs which compel them to communicate their views on abortion to others in a caring, conversational and compassionate manner, and to pray with and share the good news of Jesus Christ with those who are going through crises, including unplanned pregnancies.

166.   Plaintiffs' religious activities are protected by the Free Exercise Clause of the First Amendment to the United States Constitution.

167.   The Ordinance, on its face and as applied, substantially burdens Plaintiffs' free exercise of their religious beliefs by prohibiting Plaintiffs from engaging in the kind of caring, conversational and compassionate interactions with women and their partners and friends who are facing crises, including unplanned pregnancies.

168.   The Ordinance targets and singles out for discriminatory treatment persons who counsel against abortions.

169.   The Ordinance, on its face and as applied, is not a neutral law of general applicability.

170.   The Ordinance does not serve a compelling or even legitimate state interest and is not the least restrictive means of achieving the Harrisburg Defendants' asserted interest.

171.   The Ordinance is not narrowly tailored.

172.   The Ordinance is irrational, unreasonable, and imposes unjustifiable restrictions on constitutionally protected free exercise of religion.

173.   Infringement of the right to free exercise of religion exercised in combination of other fundamental constitutional rights subjects the Ordinance to strict scrutiny review.

174.   As a direct and proximate result of the Harrisburg Defendants' actions, policies, practices, and customs as alleged herein, Plaintiffs are chilled and deprived of their rights to freely exercise their religion.

175.   Plaintiffs have suffered, are suffering, and will continue to suffer irreparable harm as a direct result of the Harrisburg Defendants' conduct and the existence, enforcement, and threat of enforcement of the Ordinance.

WHEREFORE, Plaintiffs respectfully pray for relief against the Harrisburg Defendants as hereinafter set forth in the prayer for relief.

## COUNT III — VIOLATION OF THE RIGHTS TO FREEDOM OF ASSEMBLY AND ASSOCIATION UNDER THE UNITED STATES CONSTITUTION

176.   Plaintiffs re-allege all matters set forth in paragraphs 1-121 and incorporate them herein as if set forth in full.

177.   Public sidewalks and streets are quintessential public fora for speech.

178.   Peaceful expressive activities, including oral communications and literature distribution, are rights guaranteed by the Free Speech and Press Clauses of the First Amendment to the United States Constitution.

179.   Peaceful use of public sidewalks and streets for the purpose of seeking political, social, moral, or religious change is a right guaranteed by the Free Assembly Clause of the First Amendment to the United States Constitution.

180.   Peaceful grouping of two or more persons for the purpose of enhancing communicative efforts, *i.e.*, the right to associate, is guaranteed by the First and Fourteenth Amendments to the United States Constitution.

181.   The Ordinance does not serve a compelling state interest nor is it the least restrictive means of achieving the Harrisburg Defendants' asserted interest.

182.   The existence and enforcement of the Ordinance chills and deprives Plaintiffs of their rights to free speech, free press, free association, and free assembly protected by the First and Fourteenth Amendments to the United States Constitution.

183.   Plaintiffs have suffered, are suffering, and will continue to suffer irreparable harm to their First Amendment rights as a direct result of the Harrisburg Defendants' conduct and the existence, enforcement, and threat of enforcement of the Ordinance.

WHEREFORE, Plaintiffs respectfully pray for relief against the Harrisburg Defendants as hereinafter set forth in the prayer for relief.

## COUNT IV — VIOLATION OF EQUAL PROTECTION UNDER THE UNITED STATES CONSTITUTION

184.   Plaintiffs re-allege all matters set forth in paragraphs 1-121 and incorporate them herein as if set forth in full.

185.   The Equal Protection Clause of the Fourteenth Amendment requires that the government treat similarly situated persons equally in the imposition of burdens or the distribution of benefits.

186.   The Ordinance treats Plaintiffs differently than similarly situated people in that it penalizes Plaintiffs and others who want to espouse a message against abortion within 20 feet of any portion of every entrance, exit or driveway of a health care facility while permitting those who support abortion and are employed by or agents of Harrisburg's abortion clinics to freely espouse their views without restriction.

187.   The Ordinance treats Plaintiffs differently than similarly situated people in that it penalizes Plaintiffs and others who are not employees of health care

41

facilities by requiring that they only "congregate, patrol, picket or demonstrate" outside 20 feet of any portion of every entrance, exit or driveway of a health care facility while those who are employed by the health care facilities can "congregate, patrol, picket or demonstrate" without restriction.

188.   The Ordinance violates various fundamental rights of Plaintiffs, such as the rights of free speech, free assembly, and free exercise of religion.

189.   When government regulations, such as the Ordinance challenged herein, infringe on fundamental rights, discriminatory intent is presumed.

190.   The Harrisburg Defendants have intentionally discriminated against Plaintiffs by foreclosing their ability to communicate their message in public fora, despite having no compelling, substantial or rational reason to do so.

191.   The Harrisburg Defendants have intentionally discriminated against Plaintiffs and other third parties not before the Court by targeting all individuals who counsel against abortion at abortion clinics, as evidenced, in part, by the "Findings and Purpose" section of the Ordinance.

192.   The Ordinance violates Plaintiffs' equal protection guarantee by expressly allowing abortion clinic employees and agents to exercise free and unqualified speech within the zones while restricting Plaintiffs' expressive activities within the zones.

193.   The Harrisburg Defendants can offer no compelling, important, or even rational interest to justify prohibiting Plaintiffs' or third parties' pro-life speech and expressive activities in the many traditional public fora adjacent to health care facilities throughout Harrisburg.

194.   The Ordinance is not the least restrictive means and is not narrowly tailored to accomplish any permissible purpose sought to be served by the Harrisburg Defendants.

195.   The Ordinance and the Harrisburg Defendants' actions pursuant to the Ordinance constitute a violation of Plaintiffs' right to equal protection on its face and as applied in violation of the Fourteenth Amendment to the United States Constitution.

196.   The Harrisburg Defendants have caused, and will continue to cause, Plaintiffs to suffer undue and actual hardship and irreparable injury. Plaintiffs have no adequate remedy at law to correct the continuing deprivations of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for relief against the Harrisburg Defendants as hereinafter set forth in the prayer for relief.

## COUNT V — VIOLATION OF DUE PROCESS RIGHTS UNDER THE UNITED STATES CONSTITUTION

197.   Plaintiffs re-allege all matters set forth in paragraphs 1-121 and incorporate them herein as if set forth in full.

43

198.   The Ordinance impermissibly risks the violation of Plaintiffs' substantive and procedural due process rights by creating the substantial likelihood that the Ordinance will be applied contrary to its written terms by solely restricting speakers outside of abortion clinics, as shown by the appearances of Harrisburg police in response to calls made by pro-abortion minded employees and agents of Harrisburg's abortion clinics.

199.   The Ordinance violates Plaintiffs' substantive and procedural due process rights in that it is applied contrary to its written terms by solely restricting speakers outside of abortion clinics.

200.   The Ordinance fails to provide both substantive and procedural due process because it lacks sufficient notice by failing to make clear to Plaintiffs or to any ordinary person, by markings, signage, or otherwise, where along the public fora each anti-speech zone begins or ends.

201.   The Ordinance fails to provide both substantive and procedural due process because it lacks sufficient notice of penalties by providing for, at times, minimum fines, but no maximum.

202.   The Ordinance is an irrational and unreasonable policy which imposes irrational and unreasonable restrictions on the exercise of Plaintiffs' constitutional rights.

203.   The Harrisburg Defendants have violated Plaintiffs' due process rights by acting arbitrarily, capriciously, unreasonably, and with improper motives by selectively targeting pro-life speech, including that of Plaintiffs, outside of Harrisburg's abortion clinics by enactment and enforcement of the Ordinance.

204.   The Harrisburg Defendants have violated Plaintiffs' due process rights by acting arbitrarily, capriciously, unreasonably, and with improper motives by selectively enforcing the Ordinance only against pro-life speech outside of Harrisburg's abortion clinics and not all other health care facilities in the City.

205.   The Ordinance does not serve a compelling, important, or even rational reason to prevent Plaintiffs from engaging in their speech and peaceful expressive activities in traditional public fora.

206.   The Ordinance violates Plaintiffs' substantive and procedural due process rights on its face and as applied in violation of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiffs respectfully pray for relief against the Harrisburg Defendants as hereinafter set forth in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the court assume jurisdiction over this action and order the following relief:

A.     Declare that Harrisburg City Ordinance No. 12-2012, which is codified at Chapter 3-371 of the Harrisburg City Code of Ordinances, §§ 3-371 *et seq*., is unconstitutional on its face because it violates the constitutional rights guaranteed to Plaintiffs and others under the First and Fourteenth Amendments to the United States Constitution;

B.     Declare that Harrisburg City Ordinance No. 12-2012, which is codified at Chapter 3-371 of the Harrisburg City Code of Ordinances, §§ 3-371 *et seq*., is unconstitutional as applied to Plaintiffs' expressive activities at the Planned Parenthood and Hillcrest Clinics in Harrisburg because it violates the constitutional rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution;

C.     Enter preliminary and permanent injunctions enjoining and restraining the Harrisburg Defendants, their officers, agents, employees and others acting in concert with them from enforcing or threatening to enforce Harrisburg City Ordinance No. 12-2012, which is codified at Chapter 3-371 of the Harrisburg City Code of Ordinances, §§ 3-371 *et seq*., against Plaintiffs and other similarly situated individuals not before the Court;

D.     Award Plaintiffs nominal damages against the Harrisburg Defendants for the violation of their federal constitutional rights;

E.     Award Plaintiffs their costs of litigation, including reasonable attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988; and

F.     Grant such other and further relief as this Court deems necessary and proper.

## **JURY DEMAND**

Plaintiffs demand a jury for all issues so triable.

DATED: March 24, 2016                    Respectfully submitted:

/s/ Jonathan D. Christman
Horatio G. Mihet*
Jonathan D. Christman (PA 306634)
Liberty Counsel
P.O. Box 540774
Orlando, Florida 32854
Tel: (407) 875-1776
Fax: (407) 875-0770
hmihet@lc.org
jchristman@lc.org
*Pro hac vice petition forthcoming

*Attorneys for Plaintiffs*

47

## VERIFICATION OF COMPLAINT

## PURSUANT TO 28 U.S.C. § 1746

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: *3-18-16*

*Colleen Reilly*
Colleen Reilly

## VERIFICATION OF COMPLAINT

## PURSUANT TO 28 U.S.C. § 1746

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: 17 March 16

Becky Biter

## VERIFICATION OF COMPLAINT

## PURSUANT TO 28 U.S.C. § 1746

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: *March 24, 2016*

*Rosalie Gross*
Rosalie Gross

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was filed via the Court's ECF filing system.

I also hereby certify that a copy of the foregoing will be sent via U.S.P.S. first class mail and FedEx to Neil Grover, City Solicitor for the City of Harrisburg, at the following location:

Office of the Solicitor
The City of Harrisburg
Dr. MLK Jr. Government Center
10 N. 2nd Street, Suite 402
Harrisburg, PA 17101-1681

DATED: March 24, 2016                    /s/ Jonathan D. Christman
                                         Jonathan D. Christman
                                         *Attorney for Plaintiffs*