IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COLLEEN REILLY, BECKY BITER, and ROSALIE GROSS,** | : : : | |
| | : | **Civ. No. 1:16-CV-0510** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF HARRISBURG, HARRISBURG CITY COUNCIL, and ERIC PAPENFUSE, in his official capacity as Mayor of Harrisburg,** | : : : : : : | |
| | : | **Judge Sylvia H. Rambo** |
| **Defendants.** | : | |

## M E M O R A N D U M

In this First Amendment action, Plaintiffs seek to strike down as unconstitutional a city ordinance requiring demonstrators to remain a certain distance from the entrances, exits, and driveways of health care facilities. Presently before the court are Plaintiffs' motion to preliminarily enjoin the enforcement of the ordinance, as well as Defendants' motion to dismiss Plaintiffs' claims. For the reasons stated herein, Plaintiffs' motion for a preliminary injunction will be denied, and Defendants' motion to dismiss will be granted in part and denied in part.

## I.    Factual and Procedural Background

Plaintiffs are individual citizens of Pennsylvania who regularly provide what they euphemistically refer to as "sidewalk counseling" outside of two health care

facilities in Harrisburg, Pennsylvania that perform, among other procedures, abortions.   (Doc. 1, ¶¶ 57-62.)   Plaintiffs engage in leafletting, prayer, and individual conversations with women who are attempting to enter the health care facilities in an effort to dissuade them from obtaining abortions.[1]   (*Id*. at ¶¶ 62-63.)

On November 13, 2012, Defendant Harrisburg City Council adopted Ordinance No. 12-2012 entitled "Interference With Access To Health Care Facilities (the "Ordinance")," which became effective on November 23, 2012. (*Id*. at ¶ 17.); *see also* Harrisburg, Pa. Mun. Code § 3-371 (2015), http://ecode360.com/13739606.  The Ordinance's stated purpose is "to promote the health and welfare of [Harrisburg] residents and visitors to [Harrisburg]'s health care facilities, as well as the health and welfare of those who may wish to voice their constitutionally protected speech outside of such health care facilities." Harrisburg, Pa. Mun. Code, §3-371.2C.   The Ordinance makes it illegal for individuals, other than police or emergency personnel performing official functions, or employees of health care facilities that are assisting patients to enter or exit the facilities, to "knowingly congregate, patrol, picket or demonstrate in a zone extending 20 feet from any portion of an entrance to, exit from, or driveway of a health care facility."  *Id*. at § 3-371.4A.

---

[1] Plaintiffs apparently also counsel in other forms, such as photographing and shouting at employees and patients of the health care facilities as they enter and exit the buildings, posting large signs depicting pictures of dead babies, jumping out at employees and patients from behind cars and dumpsters, and chanting "kill, kill, kill, death, death, death."  (*See* Doc. 32-1; *see also* Doc. 36-1, p. 16; Doc. 37, "YouTube Video of Rosalie Gross".)

On March 24, 2016, Plaintiffs filed a complaint alleging, *inter alia*, that the "buffer zones" created by the Ordinance make it impossible for them to effectively counsel or distribute literature in opposition to abortions at the Hillcrest Women's Health Center located on North Front Street (the "Hillcrest Clinic"), and the Harrisburg Medical Center on North Second Street, which is operated by Planned Parenthood (the "Planned Parenthood Clinic"), because the buffer zones cover much of the sidewalk surrounding the clinics and are not physically marked.  (Doc. 1, ¶¶ 40-41, 44, 50, 56.)  Plaintiffs argue that the Ordinance violates their First Amendment rights to freely speak, exercise their religion, and assemble, as well as their Fourteenth Amendment due process and equal protection rights.  On March 25, 2016, Plaintiffs filed a motion to preliminarily enjoin the Ordinance due to the irreparable harm it causes to their First Amendment rights.  (*See* Doc. 3.)  In addition to opposing Plaintiffs' motion for a preliminary injunction, on April 26, 2016, Defendants filed a motion to dismiss for failure to state a claim.  (Doc. 16.)  Both motions have been fully briefed and are ripe for disposition.

## II.   Discussion

Plaintiffs have moved for a preliminary injunction of the enforcement of the Ordinance on the basis that they are being irreparably harmed by the Ordinance's unconstitutional abrogation of their First Amendment right to engage in protected speech in public fora.  Specifically, Plaintiffs argue that the Ordinance is a content-

based restriction on protected speech because it only prohibits anti-abortion speech, and that it does not pass strict scrutiny because it is not narrowly tailored to serve a compelling state interest.  Defendants have both opposed Plaintiffs' motion for a preliminary injunction and filed a motion to dismiss, arguing that the Ordinance is content-neutral and narrowly tailored to serve a significant government interest.

Plaintiffs expressly assert both facial and as-applied challenges to the Ordinance under the Free Speech, Free Exercise, and Free Assembly clauses of the First Amendment, as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[2]  While an as-applied challenge aims at correcting violations of the named plaintiffs' individual rights, "[a] facial challenge 'seeks to vindicate not only [a plaintiff's] own rights, but those of others who may also be adversely impacted by the statute in question.'"  *Bruni v. City of Pittsburgh*, 824 F.3d 353, 362 (3d Cir. 2016) (quoting *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 623 (3d Cir. 2013)) (alterations in original).  A statute may be invalidated on its face under the First Amendment only "if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *United States v. Stevens*, 559 U.S. 460, 473 (2010).  Despite the distinction

---

[2] Plaintiffs bring their claims pursuant to Section 1983, which offers private citizens an avenue to redress constitutional violations committed by state officials.  *See* 42 U.S.C. § 1983.  "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors."  *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).

between facial and as-applied challenges, the court must still consider "facial challenges simply by applying the relevant constitutional test to the challenged statute, without trying to dream up whether or not there exists some hypothetical situation in which application of the statute might be valid." *Bruni*, 824 F.3d at 363 (citing *Doe v. City of Albuquerque*, 667 F.3d 1111, 1124-25 (10th Cir. 2012)). Thus, "[t]he relevant constitutional test . . . remains the proper inquiry," *Bruni*, 824 F.3d at 363 (citing *Doe*, 667 F.3d at 1127), as the distinction goes to the remedy sought rather than what must be pleaded to state a claim, *see Citizens United v. FEC*, 558 U.S. 310, 331 (2010).

Because the disposition of both motions turns on the merits analysis of Plaintiffs' First Amendment claims, the court must address whether Plaintiffs have stated a free speech claim under the less rigorous 12(b)(6) standard before deciding if Plaintiffs have met the considerably more onerous burden required for the granting of a preliminary injunction.[3]  As a threshold matter applicable to both motions, however, the court must determine the level of scrutiny to apply to the

---

[3] Although the court's recitation of the relevant facts and procedural history contains reference to extra-pleading submissions the parties made as part of the preliminary injunction record, in reviewing Plaintiff's claims with regard to Defendants' motion to dismiss, the court relies only on the allegations in the complaint and the text of the Ordinance. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (in deciding a motion to dismiss, the court must rely on "only the allegations in the complaint, exhibits attached to the complaint[,] and matters of public record.") (citation omitted).

Ordinance, which turns on whether its restrictions on speech are content-based or content-neutral.

## A.   <u>Content Neutrality</u>

Plaintiffs argue that the United States Supreme Court's holding in *Reed v. Town of Gilbert*, __ U.S. __, 135 S. Ct. 2218, 2226 (2015), requires that strict scrutiny be applied to the Ordinance because it discriminates based upon content by only prohibiting certain types of speech and "defining regulated speech by its function or purpose."[4]  *Id.* at 2227.  Specifically, Plaintiffs argue that by making it illegal for individuals to congregate, patrol, picket or demonstrate within the restrictive zone, the Ordinance limits speech both by type and its intended purpose. Defendants argue in response that the Ordinance is content-neutral because it does not regulate what speech may occur, only where it may occur, does not prefer one viewpoint over another, and its purpose of protecting patients' access to health care facilities is unrelated to the content of speech.

A regulation restricting speech is content-based if it: (1) "define[s] speech by particular subject matter"; (2) "define[s] regulated speech by its function or purpose"; or (3) cannot be justified "without reference to the content of the regulated speech" or was "adopted by the government 'because of disagreement

---

[4] As an initial matter, the court notes that the holding in *Reed* did not overturn the holdings in *Hill v. Colorado*, 530 U.S. 703, 715 (2000), or *Brown v. City of Pittsburgh*, 586 F.3d 263  (3d Cir. 2009), either expressly or implicitly, and those cases remain good law.  In *Bruni*, the Third Circuit declined to consider whether *Reed* had altered the content-neutrality analyses discussed in *Hill* and *Brown*.  *See Bruni*, 824 F.3d at 364.

with the message [the speech] conveys.'" *Reed*, 135 S. Ct. 2227 (citation omitted).

"A law that is content-based on its face is subject to strict scrutiny regardless of the

government's benign motive, content-neutral justification, or lack of 'animus

toward the ideas contained' in the regulated speech." *Id*. at 2228 (quoting

*Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)).   Under strict

scrutiny, the challenged law is "presumptively unconstitutional and may be

justified only if the government proves that [it is] narrowly tailored to serve

compelling state interests," *Bruni*, 824 F.3d at 363 (citing *Reed*, 135 S. Ct. at

2226), and the content-based restriction must be "the least restrictive or least

intrusive means of serving the government's interests," *McCullen v. Coakley*, __

U.S. __, 134 S. Ct. 2518, 2535 (2014).

On the other hand, "[a] regulation that serves purposes unrelated to the

content of expression is deemed neutral, even if it has an incidental effect on some

speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S.

781, 791 (1989) (citing *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47-48

(1986)).   Intermediate scrutiny applies to such content-neutral restrictions, wherein

the challenged law must be "narrowly tailored to serve a significant governmental

interest." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 764 (1994).   Under

intermediate scrutiny, the restriction on speech need not be the least restrictive

means available, but must "leave open ample alternative channels for communication." *Ward*, 491 U.S. at 791 (citation omitted).

In *McCullen v. Coakley*, the United States Supreme Court reviewed a Massachusetts law, very similar to the Ordinance, which created a thirty-five foot buffer zone around the entrances and driveways of "reproductive health care facilit[ies]." *McCullen*, 134 S. Ct. at 2526. The *McCullen* Court found that the Massachusetts law was content-neutral because it did not require law enforcement to examine the content of speech to determine if individuals were violating the law, but simply where individuals were located. *Id*. at 2531 (citations omitted). The Court also found that the law's purposes of supporting "public safety, patient access to healthcare, and the unobstructed use of public sidewalks and roadways" were content-neutral. *Id*. (citing *Boos v. Barry*, 485 U.S. 312, 321 (1988) (finding "congestion," "interference with ingress or egress," and "the need to protect . . . security" as content-neutral concepts). The *McCullen* Court noted that "a facially neutral law does not become content based simply because it may disproportionately affect speech on certain topics. On the contrary, '[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.'" *Id*. (citing *Ward*, 491 U.S. at 791) (alteration in original). Rather, "[t]he question in such a case is whether the law is 'justified without reference to the content of the

regulated speech.'" *Id.* (citing *Renton*, 475 U.S. at 48) (further citation omitted) (emphasis removed); *see also Brown v. City of Pittsburgh*, 586 F.3d 263, 269-70 (3d Cir. 2009) ("It is a traditional exercise of the States' police powers to protect the health and safety of their citizens. That interest may justify a special focus on unimpeded access to health care facilities and the avoidance of potential trauma to patients associated with confrontational protests.") (quoting *Hill v. Colorado*, 530 U.S. 703, 715 (2000)) (internal quotation marks and citation omitted).

Here, the Ordinance's stated purpose is "to promote the health and welfare of [Harrisburg] residents and visitors to [Harrisburg]'s health care facilities, as well as the health and welfare of those who may wish to voice their constitutionally protected speech outside of such health care facilities." Harrisburg, Pa. Mun. Code, §3-371.2C. Such a purpose has been repeatedly found by higher courts to be content-neutral, and, accordingly, the court finds that the Ordinance is not content-based on its face. Plaintiffs argue, nonetheless, that the Ordinance's prohibition on patrolling, picketing, or demonstrating makes it content-based under *Reed*'s analytical framework because the Ordinance frustrates the purpose of Plaintiffs' speech. The court disagrees. In *Hill v. Colorado*, the Supreme Court found that a similar statute which prohibited engaging in "oral protest, education, or counseling" with individuals who were attempting to enter a health care facility was content-neutral, despite not restricting casual speech such as saying "good

9

morning" in the same area.  *Hill*, 530 U.S. at 724.  The *Hill* Court found the statute

in question content-neutral because its "restrictions appl[ied] equally to all

demonstrators, regardless of viewpoint, and the statutory language ma[de] no

reference to the content of the speech."  *Id.* at 719, 720.  In explaining that the

statute furthered legitimate, content-neutral purposes, the *Hill* Court stated that:

> the statute's restriction seeks to protect those who enter a
> health care facility from the harassment, the nuisance, the
> persistent importuning, the following, the dogging, and
> the implied threat of physical touching that can
> accompany an unwelcome approach . . . of a patient by a
> person wishing to argue vociferously face-to-face and
> perhaps thrust an undesired handbill upon her. The
> statutory phrases, 'oral protest, education, or counseling,'
> distinguish speech activities likely to have those
> consequences from speech activities that are most
> unlikely to have those consequences.

*Id.* at 724.

Likewise, in *Brown v. City of Pittsburgh*, the Third Circuit held that another

statute similar to the Ordinance, which made it illegal for individuals to

"congregate, patrol, picket or demonstrate" within fifteen feet of any entrance to a

hospital or health care facility, was content-neutral.  *Brown*, 586 F.3d at 273, 275.

The plaintiffs in *Brown*, like Plaintiffs here, argued that the statute's exemption

from its restrictions on speech given to police, fire, rescue, or emergency personnel

in the course of their official business, and employees of the health care facility in

assisting patients to enter or exit the facility, made the statute content-based

because those exempted persons would be allowed to picket or demonstrate within the restricted zone, while the plaintiffs would not. *Id*. at 273-74. The Third Circuit rejected that argument, however, finding that the statute was amenable to "an interpretation prohibiting even the exempted classes of persons from 'picket[ing] or demonstrat[ing]' within the buffer zone" because the statute limited the exemption to safety personnel and facility employees performing only their official functions. *Id*. at 275 (alterations in original).

Here, the Ordinance has similar limiting language in its exemption, stating that the restrictions do not apply to "police and public safety officers, fire and rescue personnel, or other emergency workers *in the course of their official business* or to . . . employees or agents of the hospital, medical office or clinic *engaged in assisting patients and other persons to enter or exit the hospital, medical office, or clinic*." Harrisburg, Pa. Mun. Code, § 3-371.4A (emphasis supplied). Nothing in the Ordinance as a whole, or in the limited exemption for certain personnel, favors one view point over another with regard to the abortion debate. In fact, the Ordinance does not merely apply to facilities that offer abortion services, but would also apply to prevent speech expressed in the form of "patrolling, picketing, or demonstrating" within the buffer zone outside of hospitals or other health care facilities within Harrisburg with regard to equally

fringe viewpoints, such as opposition to blood transfusions, preventive vaccinations, or psychiatric care.

Lastly, Plaintiffs argue that the Ordinance, even if not content-based on its face, nonetheless restricts speech based on its content because it cannot be justified "without reference to the content of the regulated speech." *Reed*, 135 S. Ct. at 2227. Once again, the court disagrees. Members of law enforcement can identify patrolling, picketing, or demonstrating without knowing or needing to ascertain the content of the speech. *See Hill*, 530 U.S. at 721 ("[I]t is unlikely that there would often be any need to know exactly what words were spoken in order to determine whether 'sidewalk counselors' are engaging in 'oral protest, education, or counseling' rather than pure social or random conversation."). Whether individuals within the restricted zones are demonstrating either in favor of or against certain medical procedures, police would be able to identify the violation of the Ordinance without hearing the speech.

Based on the discussion above, the court finds that the Ordinance is a content-neutral time, place, or manner restriction upon speech. Accordingly, intermediate scrutiny applies, and the court will now turn to Defendants' motion to dismiss using that analytical framework.

## B.   Motion to Dismiss

### 1.   Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a), which requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For a complaint to survive dismissal it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *United States v. Pennsylvania*, 110 F. Supp. 3d 544, 548 (M.D. Pa. 2015) (quoting *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012)); *see also* Fed. R. Civ. P. 12(b)(6).

### 2.   Analysis

Defendants argue in support of their motion to dismiss that Plaintiffs have not stated a plausible cause of action with regard to their First Amendment and related claims because, *inter alia*: (1) the Ordinance is narrowly tailored and leaves open ample alternatives, (2) the Ordinance is not unconstitutionally vague, (3) the

Ordinance is not unconstitutionally overbroad, (4) the prior restraint doctrine is inapplicable, (5) the Ordinance is not selectively enforced against Plaintiffs, (6) the Due Process and Equal Protection Clauses do not apply, (7) the Ordinance does not selectively burden Plaintiffs' religiously motivated conduct, and (8) Harrisburg City Council and Mayor Papenfuse are not proper defendants.  Plaintiffs argue in response that, especially in light of the Third Circuit's recent holding in *Bruni*, they have pleaded sufficient facts to support a plausible claim for First Amendment violations.  The court will address Defendants' arguments in turn.

### a.   Whether the Ordinance is Narrowly Tailored

As the court found above in section III.A of this memorandum opinion, the Ordinance is content-neutral.  Accordingly, it is subject to intermediate scrutiny, which requires that a restriction on speech be "narrowly tailored to serve a significant governmental interest."  *Madsen*, 512 U.S. at 764.  The restriction on speech need not be the least restrictive means available, but must "leave open ample alternative channels for communication."  *Ward*, 491 U.S. at 791(citation omitted).  As the Supreme Court has repeatedly held, "ensuring public safety and order, promoting the free flow of traffic on streets and sidewalks, protecting property rights, and protecting a woman's freedom to seek pregnancy-related services" are significant governmental interests.  *McCullen*, 134 S. Ct. at 2535 (quoting *Schenck v. Pro-Choice Network*, 519 U.S. 357, 376 (1997), then citing

*Madsen*, 512 U.S. at 767-68).  Not only does the government have "undeniably significant interests in maintaining public safety on those same streets and sidewalks, as well as in preserving access to adjacent healthcare facilities," but "[t]he buffer zones clearly serve these interests." *McCullen*, 134 S. Ct. at 2535, 2541.  Plaintiffs do not appear to dispute that the government's interests in enforcing the Ordinance are significant, and, accordingly, the court finds that the Ordinance's purported goals of "promot[ing] the health and welfare of [Harrisburg] residents and visitors to [Harrisburg]'s health care facilities, as well as the health and welfare of those who may wish to voice their constitutionally protected speech outside of such health care facilities" serve significant government interests.  Harrisburg, Pa. Mun. Code, § 3-371.2C.  Plaintiffs do not agree, however, that the Ordinance is narrowly tailored or leaves open ample alternative channels of communication.

The Third Circuit recently explained that, in light of the Supreme Court's holdings in *McCullen* and *Reed*, a restriction on speech is narrowly tailored only where the government can "demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests." *Bruni*, 824 F.3d at 369 (quoting *McCullen*, 134 S. Ct. at 2540).  To meet this burden, the government must do more than "simply [] say that other approaches have not worked." *Id*.  Rather, the government has "to show either that substantially less-

15

restrictive alternatives were tried and failed, or that the alternatives were closely examined and ruled out for good reason." *Id*. at 370. However, "some deference must be afforded to a municipality's judgment in adopting a content-neutral restriction on speech," and therefore the government need not show that "it has used the least-restrictive alternative" or that "it has tried or considered *every* less burdensome alternative to its Ordinance." *Id*.

Nonetheless, at the motion to dismiss stage Defendants have not had the opportunity to produce any evidence, and the court must accept the well-pleaded allegations in the complaint. *See id*. at 371. In their complaint, Plaintiffs allege that "[n]o alternatives short of instituting the anti-speech buffer zones were considered by [Defendants] before adopting the Ordinance." (Doc. 1, ¶ 30.) Accordingly, the court is required to find that, at this early stage of the litigation, Plaintiffs have sufficiently alleged that the Ordinance is not narrowly tailored.[5]

### b.     Whether the Ordinance is Impermissibly Vague

Plaintiffs allege in the complaint that the Ordinance is unconstitutionally vague because it fails to give fair notice to individuals as to what it prohibits by not

---

[5] The same is true of two of Plaintiffs' other First Amendment claims, namely their freedom of press and assembly claims. In *Bruni*, the Third Circuit stated that the plaintiffs' free press claim was "properly considered a subset of their broader free speech claim" because "the City's inability to show at the motion to dismiss stage that substantially less burdensome alternatives would fail to achieve its interests doom[ed] its broad prohibition on all of the [p]laintiffs' expressive activities, including the prohibition on leafletting." *Bruni*, 824 F.3d at 373. Applying the same logic here and extending it to Plaintiffs' free assembly claim due to the Ordinance's prohibition against "congregating" in the restricted zones, the court finds that it would be premature to dismiss Plaintiffs' free press and assembly claims.

defining the terms "congregate," "patrol," "picket," or "demonstrate," and gives law enforcement wide discretion to determine on a case-by-case basis what is permissible within the restricted zones.  Defendants contend that the Ordinance is not impermissibly vague because it is capable of lay understanding and gives adequate guidance to police in its enforcement.

A law is impermissibly vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732.  However, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Id*. at 740 (quoting *Ward*, 491 U.S. at 794).  The Supreme Court has previously found that terms such as "demonstrating" and "protest[ing]" were not vague, stating that "[t]he likelihood that anyone would not understand any of those common words seems quite remote." *Id*.; *see also Schenck*, 519 U.S. at 383.  Thus, the court finds that the Ordinance's prohibition of congregating, patrolling, picketing or demonstrating is likely to be understood by people of reasonable intelligence and is not vague on this ground.

Plaintiffs' next argument supporting their vagueness claim is that police are given too much discretion in enforcing the Ordinance.  As with Plaintiffs' first vagueness argument, the Supreme Court has refuted similar arguments in prior

precedent.  In *Hill*, the challenged statute created a buffer zone around individuals approaching health care facilities and prohibited non-consensual attempts to engage "in oral protest, education, or counseling" with such individuals.  *Hill*, 530 U.S. at 739.  The plaintiffs argued that the inclusion of the term "education" made the statute vague because police would have wide discretion in choosing under what circumstances to enforce the statute.  In rejecting the plaintiffs' argument, the Supreme Court stated that "the discretion given to the police in deciding whether to charge an offense seems no greater than the prosecutorial discretion inherent in any generally applicable criminal statute."  *Id.* at 740.  Here, as stated above with regard to the Ordinance's content neutrality, law enforcement is able to determine whether the Ordinance is being violated by merely observing individuals within the restricted zones, as congregating, patrolling, picketing, and demonstrating all involve obvious visual evidence that they are taking place.  Thus, the court finds that the Ordinance does not create impermissibly wide discretion for law enforcement and is not likely to be discriminatorily enforced.

Accordingly, based on the language of the Ordinance and the Supreme Court precedent rejecting similar vagueness arguments, the court finds that Plaintiffs have failed to state a claim that the Ordinance is unconstitutionally vague, and that challenge will be dismissed.

### c.     Whether the Ordinance is Overbroad

Defendants next argue that Plaintiffs have failed to state a claim that the Ordinance is unconstitutionally overbroad.  In this regard, Plaintiffs contend that the Ordinance is overbroad because it applies to all health care facilities within Harrisburg, not merely the two clinics that offer abortion services, and thereby "creat[es] hundreds of anti-speech zones that curtail free speech in traditional public fora all over the City."  (Doc. 28, pp. 30-31 of 42.)

A law is unconstitutionally "overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Bruni*, 824 F.3d at 374 (quoting *Stevens*, 559 U.S. at 473).  In considering a statute similar to the Ordinance, The Third Circuit recently held, however, that it is unwise at the motion to dismiss stage for a court "to assess the proper scope of [an] Ordinance without there first being a resolution of the merits of the Plaintiffs' free speech claim." *Id*.  This is so because "[w]ithout the developed factual record that *McCullen* requires, we do not know the 'legitimate sweep' of the buffer zone law, and thus whether it substantially exceeds that sweep." *Id*.  Accordingly, the court finds that it is premature to dismiss Plaintiffs' overbreadth challenge.

### d.  Whether the Ordinance is a Prior Restraint

Plaintiffs also assert in their complaint that the Ordinance is an unconstitutional prior restraint on speech and must be invalidated on that basis. Defendants argue that the prior restraint doctrine is inapplicable because the Ordinance does not forbid speech in advance of its occurrence, but rather imposes subsequent punishments after certain types of speech take place in a limited area.

"The term prior restraint is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'"  *Alexander v. United States*, 509 U.S. 544, 550 (1993) (quoting M. Nimmer, Nimmer on Freedom of Speech § 4.03, p. 4-14 (1984)).  "In First Amendment jurisprudence, prior restraints are thus traditionally contrasted with 'subsequent punishments,' which impose penalties on expression after it occurs."  Smolla & Nimmer on Freedom of Speech § 15:1 (2014).  In several of the relevant Supreme Court cases involving speech restrictions like those contained in the Ordinance, the respective plaintiffs' prior restraint arguments have been roundly rejected.  *See, e.g.*, *Hill*, 530 U.S. at 733; *Schenck*, 519 U.S. at 374 n.6; *Madsen*, 512 U.S. at 764 n.2.  Higher courts have also routinely held that content-neutral time-place-manner restrictions are subject to intermediate scrutiny and not the more exacting standard under which prior restraints are reviewed. Indeed, "[i]f content-neutral prohibitions on speech at certain places were deemed

prior restraints, the intermediate standard of review prescribed in the time-place-manner jurisprudence would be eviscerated." *Bl(a)ck Tea Soc'y v. City of Bos.*, 378 F.3d 8, 12 (1st Cir. 2004).  Therefore, the court similarly finds here that the Ordinance is not a prior restraint, and Plaintiffs' challenge under that doctrine will be dismissed.

### e.    Whether the Ordinance is Selectively Enforced

Defendants' next argument is that Plaintiffs have not sufficiently pleaded an as-applied claim that the Ordinance has been selectively enforced against them because they have not properly alleged a municipal custom or policy under the familiar *Monell* framework.  Plaintiffs contend that such allegations are not required in § 1983 claims concerning a facially invalid statute.

As the court found above, the Ordinance is not unconstitutional on its face and is instead a content-neutral time-place-manner restriction.  "[I]n order to win a viewpoint discriminatory enforcement challenge against a law that is facially neutral, the challenger would need to show 'a pattern of unlawful favoritism.'" *McGuire v. Reilly*, 386 F.3d 45, 64 (1st Cir. 2004) (quoting *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 325 (2002)).  This is so because "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Rather, a plaintiff must allege that the "execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, [has] inflict[ed] the injury that the government as an entity is responsible [for] under § 1983." *Id.*

In their complaint, Plaintiffs merely allege that "[u]pon information and belief, the [] Defendants have selectively enforced the Ordinance by restricting speech only in zones surrounding abortion clinics but have not restricted speech nor attempted to restrict speech outside of other health care facilities," and that "[t]he Ordinance is an irrational and unreasonable policy." (Doc. 1, ¶¶ 38, 202.) These bare allegations fall far short of the requirement that Plaintiffs state more than "'naked assertion[s]' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Plaintiffs' guess or assumption that the Ordinance is not enforced at other health care facilities throughout Harrisburg coupled with the "naked assertion" that the Ordinance is an unreasonable policy come nowhere close to stating a plausible claim for relief. Accordingly, Plaintiffs' selective enforcement claim will be dismissed.

   **f.      Whether the Ordinance Violates the Due Process or Equal Protection Clauses**

Defendants also argue that Plaintiffs have failed to state claims that the Ordinance violates their due process or equal protection rights under the

Fourteenth Amendment because the First Amendment is directly applicable to Plaintiffs' claims and the Equal Protection Clause does not apply to content-neutral speech restrictions.  Plaintiffs contend that their substantive due process rights are being violated by the Ordinance because it is selectively enforced against their pro-life speech and gives wide discretion to government officials.

The court has already addressed Plaintiffs' arguments regarding selective enforcement and the amount of discretion afforded to government officials, and need not do so again in Plaintiffs' repleaded First Amendment challenge disguised as a due process claim.  A nearly identical claim was rejected by the Third Circuit in *Bruni*, wherein the Court stated that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Bruni*, 824 F.3d at 374-75 (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)) (internal quotation marks omitted).  The same is true of Plaintiffs' equal protection claim. *See Brown*, 586 F.3d at 283 n.22 (stating that the Equal Protection Clause "does not apply to content-neutral time, place, and manner restrictions" and that, instead, intermediate scrutiny is the applicable test).  Accordingly, the court will dismiss Plaintiffs' substantive due process and equal protection claims.

### g. Whether the Ordinance Violates the Free Exercise Clause

Defendants have moved to dismiss Plaintiffs' free exercise of religion claim on the basis that the Ordinance does not violate any religious expression.  Plaintiffs argue in response that the Ordinance prevents them from engaging in their religiously motivated anti-abortion speech.  However, in *Brown*, the Third Circuit struck down an almost identical claim, stating:

> "[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531 (1993). "A law is 'neutral' if it does not target religiously motivated conduct . . . ." *Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3d Cir. 2004). It is "generally applicable" if it extends to all conduct that undermines the purposes of the law and does not selectively burden religiously motivated conduct. *Combs v. Homer–Center Sch. Dist.*, 540 F.3d 231, 242 (3d Cir. 2008) (per curiam) (citing *Blackhawk*, 381 F.3d at 209).  Under the Supreme Court's [jurisprudence], a neutral, generally applicable law is subject only to rational-basis review, which "requires merely that the action be rationally related to a legitimate government objective." *Tenafly Eruv Ass'n v. Tenafly*, 309 F.3d 144, 165 n.24 (3d Cir. 2002).

*Brown*, 586 F.3d at 284.

Here, having already found that the Ordinance is content-neutral, the court also finds that the Ordinance is neutral and generally applicable as it pertains to the free exercise of religion.  The Ordinance does not target any one religion or religious view.  Rather, it simply creates a restricted area around the entrances, exits, and driveways of health care facilities where individuals may not

"congregate, patrol, picket or demonstrate," so that patients can safely and without impediment enter and exit the facilities.  Harrisburg, Pa. Mun. Code, § 3-371.4A. As the court found above in its discussion on content neutrality, this purpose serves the legitimate and significant government interest of providing individuals with access to health care, and there is no argument that the Ordinance's restriction on speech is not rationally related to that objective.  Accordingly, the court finds that Plaintiffs have not stated a free exercise claim and it will be dismissed.

### h. Whether Harrisburg City Council and Mayor Papenfuse are Improper Defendants

Lastly, Defendants argue that the claims against Harrisburg City Council and Mayor Papenfuse should be dismissed because they are redundant parties to the real party in interest, which is the City of Harrisburg.  Plaintiffs allege that the Harrisburg City Council enacted the Ordinance at the behest of Planned Parenthood, without considering any less restrictive alternatives, in order to silence anti-abortion speech, and that Mayor Papenfuse's role in the selective enforcement of the Ordinance cannot be fully determined without discovery.  Plaintiffs contend that the specific conduct of each require them to remain parties at this stage of the litigation.

It is well-established that administrative arms of municipalities are not separate entities for purposes of § 1983 liability.  *See, e.g.*, *Briggs v. Moore*, 251 F. App'x 77, 79 (3d Cir. 2007) (finding that both police department and prosecutor's

office were not separate entities from municipality for § 1983 claims); *Martin v. Red Lion Police Dep't.*, 146 F. App'x 558, 562 n.3 (3d Cir. 2005) ("[T]he Red Lion Police Department, as the sub-division of defendant Red Lion Borough through which the Red Lion Borough fulfills its policing functions, was not a proper defendant in an action pursuant to 42 U.S.C. § 1983."); *Reitz v. County of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) (holding that county district attorney's office was not separate entity for § 1983 liability).  Harrisburg City Council is a subdivision of the City of Harrisburg, much the same as a district attorney's office or police department.  Accordingly, the court finds that Harrisburg City Council is not a proper party to the litigation and all claims against it will be dismissed.

Defendants also argue that Mayor Papenfuse should likewise be dismissed from this case, on the similar basis that the claims against him in his official capacity are redundant with the claims against the City of Harrisburg.  *See Baez v. Lancaster Cty.*, 487 F. App'x 30, 32 (3d Cir. 2012) (finding that the official capacity claim against prison warden was "duplicative of the suit against the [municipality]").  As the district court held in *Bruni*, "[i]t would be premature to dismiss [the] Mayor [] at this early stage, prior to discovery with respect to Plaintiffs' selective enforcement claim and [the] Mayor[]'s role, if any, in such enforcement."  *Bruni v. City of Pittsburgh*, 91 F. Supp. 3d 658, 682-83 (W.D. Pa. 2015), *rev'd on other grounds*, 824 F.3d 353 (3d Cir. 2016).  Plaintiffs here

advance the same argument as the plaintiffs in *Bruni*, and the court would be inclined to agree.  However, as stated above, Plaintiffs have not properly alleged a selective enforcement claim.  Thus, the court will dismiss the claims against Mayor Papenfuse.

### C.   **Preliminary Injunction**

#### 1.   **Legal Standard**

A preliminary injunction is a form of extraordinary relief that should only be granted where the moving party can demonstrate that: (1) the movant has a "reasonable probability of success on the merits;" (2) the movant will be irreparably injured by denial of the relief; (3) granting relief will not result in even greater harm to the non-moving party; and (4) the granting of relief is in the public interest.  *See McTernan v. City of York*, 486 F. Supp. 2d 466, 470 (M.D. Pa. 2007) (citing *United States v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005)); *see also Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir.1994) (citing *Merch. & Evans, Inc. v. Roosevelt Bldg. Prods.*, 963 F.2d 628, 632-33 (3d Cir. 1992)).  Because granting a preliminary injunction is such an extraordinary remedy, it "is only appropriate 'upon a clear showing that the plaintiff is entitled to such relief.'" *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir. 2014) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  Specifically, "[t]he burden lies with the

plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." [6] *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) (citing *Maldonado v. Houston*, 157 F.3d 179, 184 (3d Cir. 1998)).

## 2.    Analysis

The court was constrained to find above with regard to Defendants' motion to dismiss that the Plaintiffs have, according to the recent holding in *Bruni*, stated plausible First Amendment claims based on the Ordinance's content-neutral time, place, and manner restrictions on speech near the entrances, exits, and driveways of health care facilities in Harrisburg.   The court found that Plaintiffs have not, however, stated claims against Harrisburg City Council or Mayor Papenfuse, or that the Ordinance is vague, a prior restraint, selectively enforced, violative of the Due Process or Equal protection Clauses, or an unconstitutional restriction on their freedom to exercise religion.   Now turning to Plaintiffs' motion to preliminarily enjoin the Ordinance's enforcement, the court need only decide whether Plaintiffs have made the appropriate showing for the granting of their motion as it pertains to

---

[6] In reviewing whether Plaintiffs' have made a clear showing that they are entitled to preliminary relief based on the above factors, the court is not limited to the well-pleaded allegations in the complaint, but may "consider[] affidavits in support of and in opposition to the application for injunctive relief." *Med. Soc. of N.J. v. Mottola*, 320 F. Supp. 2d 254, 269 (D.N.J. 2004) (citing Fed. R. Civ. P. 65(b)); *see also Pimentel & Sons Guitar Makers, Inc. v. Pimentel*, 229 F.R.D. 208, 210 (D.N.M. 2005) ("In deciding a request for a preliminary injunction, the court may review and evaluate the credibility of testimony, affidavits, and other evidence.") (citing *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003)).

the surviving First Amendment claims.[7]  Thus, the court will address the parties'

arguments as to the four factors stated above in turn.

### a. Whether Plaintiffs Have Established a Probability of Success on the Merits

In order to prevail on the merits of their First Amendment claims, Plaintiffs

must show that the Ordinance is "not narrowly tailored to serve a significant

governmental interest" and fails to "leave open ample alternative channels for

communication of information." *McCullen*, 134 S. Ct. at 2534 (citing *Ward*, 491

U.S. at 791).  Because the court has already found that significant governmental

interests are involved, the remaining questions are whether the Ordinance is

narrowly tailored and leaves open ample alternative channels for communication.

For a statute to be narrowly tailored, it "must not 'burden substantially more

speech than is necessary to further the government's legitimate interests.'"  *Id*. at

2535 (citing *Ward*, 491 U.S. at 799).  Plaintiffs argue that the Ordinance is not

narrowly tailored because it poses a significant burden on their speech, effectively

preventing them from engaging in close, personal conversations or leafletting due

to the twenty-foot buffer zone from any entrance, exit, or driveway to a health care

facility.  Although the Ordinance applies to all health care facilities in the City of

---

[7] This includes Plaintiffs' claim that the Ordinance is unconstitutionally overbroad, which the court found was premature to consider on the motion to dismiss due to the need for discovery and resolution on the merits.  The court is required, however, to consider Plaintiffs' probability of success on the merits of their overbreadth claim with regard to their motion for a preliminary injunction.

Harrisburg, Plaintiffs' arguments revolve around the effects the Ordinance has only on their ability to engage in anti-abortion speech outside of the Hillcrest and Planned Parenthood Clinics.  Plaintiffs base their argument almost entirely on the opinion in *McCullen*, wherein the Supreme Court found that the similar restriction on speech in the relevant Massachusetts statute, which prevented individuals from engaging in anti-abortion speech within thirty-five feet of the entrances, exits, or driveways of abortion clinics, prevented the plaintiffs in that case from engaging in close, personal conversations and pushed them "so far back from the clinics' driveways that they c[ould] no longer even attempt to offer literature as drivers turn into the parking lots."  *Id*. at 2536.

Defendants argue that the Ordinance is distinguishable to the statute in *McCullen* because the twenty foot buffer zone here is much smaller than the thirty-five foot zone created by the Massachusetts statute.  Whereas the plaintiffs in *McCullen* would have to raise their voice to reach their intended audience, here, Defendants argue, individuals standing outside the buffer zone at the Planned Parenthood clinic can easily communicate in a conversational tone of voice with individuals inside the zone.  Regarding the Hillcrest Clinic, Defendants contend that patients usually only drive to that clinic, rather than walking down the sidewalk on Front Street, because it has a parking lot and thus there is no effect on individuals' speech when standing on the sidewalk in front of the facility.

Plaintiffs agree that most patients arrive at the Hillcrest Clinic by car rather than on foot, as Plaintiff Colleen Reilly testified that by her estimate, eighty-five percent of patients arrive by vehicle, Plaintiff Becky Biter estimated that ninety percent drive to the facility, and Plaintiff Rosalie Gross estimated the number to be ninety-five percent.  (*See* Doc. 35, ¶ 7; Doc. 33, ¶ 5; Doc. 34, ¶ 5.)  Ms. Biter further testified that, although patients rarely approach the Hillcrest Clinic on foot, when they do she is able to stand on the public sidewalk on either side of the driveway and speak to them in her "desired soft, peaceful, and conversation tone" as they walk past her. (Doc. 33, ¶ 4.)

The Third Circuit recently stated that "[w]hat matters is the burden on speech that such zones impose, of which size is one but only one feature," and that previous Supreme Court cases dealing with similar statutes "turned on their distinct factual records, not a simple difference in real estate." *Bruni*, 824 F.3d at 368. Thus, while Defendants' argument regarding the size of the buffer zone is relevant, it alone is not dispositive.  Defendants' argument that the smaller zone allows for conversational speech and is therefore not as substantial of a burden on speech as the statute in *McCullen*, however, is persuasive and reduces the probability of Plaintiffs' success on the merits.

Turning to Plaintiffs' contention regarding their inability to hand out literature to drivers due to the Ordinance's buffer zone around driveways at health

care facilities, Defendants argue with regard to the Hillcrest Clinic that allowing individuals to stop cars at the driveway to distribute leaflets would cause a substantial safety hazard as there is no parking lane along that area of Front Street and the rear end of stopped vehicles would block a lane of traffic.  In addition, City of Harrisburg Chief of Police Thomas Carter testified that traffic along that part of Front Street routinely travels in excess of thirty-five miles per hour and he is aware of at least one accident at the Hillcrest Clinic.  (*See* Doc. 32-1, ¶ 6.)  Although the court recognizes that Plaintiffs' inability to distribute leaflets to drivers as they enter the Hillcrest Clinic is a substantial burden on their speech, the burden is not greater than necessary in light of the significant safety hazard created by blocking a lane of traffic on a busy street where vehicles are traveling at high speeds.

Despite the legitimate and significant governmental interests served by the Ordinance, post-*McCullen*, Defendants must "demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests."  *Bruni*, 824 F.3d at 369 (quoting *McCullen*, 134 S. Ct. at 2540).  To meet this burden, the government has "to show either that substantially less-restrictive alternatives were tried and failed, or that the alternatives were closely examined and ruled out for good reason."  *Id*. at 370.  Here, Defendants have merely stated that, at the time the Ordinance was enacted, Harrisburg was in receivership, the police department was at times down to only four officers

patrolling the streets, and on multiple occasions there was concern that payroll would not be met. (Doc. 32-1, p. 19.) "Given the limited resources, the idea was to prevent confrontations in the first instance. Other measures would have been reactive only to confrontations that had already begun to escalate." (*Id*. at p. 20.) Further, it was determined by Harrisburg City Council that the federal Freedom of Access to Clinics Entrances Act "would not have worked to prevent confrontations at the clinics or slowing and stopping traffic." (*Id*.) While this testimony shows that Harrisburg City Council did to some degree consider less restrictive alternatives, it is unclear what specific "other measures" were considered, and whether they were "closely examined and ruled out for good reason." *Bruni*, 824 F.3d at 370.

Although Defendants have not made a clear showing, at the preliminary injunction stage, it is Plaintiffs who have the burden of clearly establishing a probability of success on the merits. Based on the record before the court, Plaintiffs have failed to carry that burden. Therefore, the court finds that the first factor weighs against granting the preliminary relief with regard to Plaintiffs' argument that the Ordinance is not narrowly tailored.

Plaintiffs' lone remaining argument to support the granting of a preliminary injunction is that they are likely to succeed on the merits of their challenge that the Ordinance is unconstitutionally overbroad. Plaintiffs contend that the Ordinance is

overbroad because it applies to all health care facilities throughout Harrisburg, rather than just the Hillcrest and Planned Parenthood Clinics. The courts in both *Hill* and *Brown* rejected similar arguments, stating that "the comprehensiveness of the statute is a virtue, not a vice, because it is evidence against there being a discriminatory governmental motive." *Brown*, 586 F.3d at 273 n.10 (quoting *Hill*, 530 U.S. at 731). Furthermore, the *Brown* court stated that the plaintiffs' claim showed a basic misunderstanding of the overbreadth doctrine, as there was no dispute that the restriction at issue affected protected speech. As such, what the plaintiffs "classified as an 'overbreadth' problem, in other words, was better understood analytically as a concern to be address within the framework of *Ward's* narrow-tailoring test." *Id*. Thus, the court finds that Plaintiffs' have failed to show a probability of success on the merits regarding their overbreadth claim, and this factor weighs against granting a preliminary injunction.

Because Plaintiffs have not demonstrated a likelihood of success on the merits of their First Amendment claims, the court need not consider the remaining requirements for granting a preliminary injunction. Where a plaintiff "has failed to demonstrate the likelihood of success on the merits . . . [t]his failure alone establishes that [the plaintiff] is not entitled to a preliminary injunction." *Ulrich v. Corbett*, 614 F. App'x 572, 575 n.3 (3d Cir. 2015) (citation omitted). The court is unwilling to disturb the status quo and prematurely enjoin the protection of access

to health care contained in the Ordinance where Plaintiffs have failed to demonstrate that they are likely to ultimately prevail on the merits.

## III.   <u>Conclusion</u>

For the reasons stated herein, the court finds that Plaintiffs have stated plausible claims for relief with regard to their First Amendment free speech, free press, and free assembly claims in Counts 1 through 3, and those claims, along with Plaintiffs' overbreadth challenge, will not be dismissed.  Plaintiffs have failed to state claims with regard to the remainder of the claims in their complaint, however, and Counts 4 and 5 will be dismissed.  As to Plaintiffs' motion for a preliminary injunction, Plaintiffs failed to clearly establish a probability of success on the merits, and the motion will be denied.

An appropriate order will issue.

 s/Sylvia H. Rambo
 SYLVIA H. RAMBO
 United States District Judge

Dated: August 31, 2016