IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COLLEEN REILLY, et al.,** | : | Civil No. 1:16-CV-510 |
| **Plaintiffs,** | : | |
| v. | : | |
| **CITY OF HARRISBURG et al.,** | : | |
| **Defendants.** | : | Judge Sylvia H. Rambo |

# M E M O R A N D U M

Before the court are cross motions for summary judgment filed by Defendant City of Harrisburg ("City") (Doc. 133) and by Plaintiffs Colleen Reilly and Becky Biter (Doc. 138). For the reasons set forth below, the City's motion will be granted, and Plaintiffs' motion will be denied.

## I.    BACKGROUND

Plaintiffs are individual citizens of Pennsylvania who regularly engage in "sidewalk counseling" outside of two health care facilities in Harrisburg, Pennsylvania that provide, among other services, abortions.[1] Their sidewalk counseling activities include leafletting, prayer, and individual conversations with women who are attempting to enter the health care facilities in an effort to dissuade them from obtaining abortions. In November 2012, Harrisburg's City Council passed Ordinance No. 12–2012 entitled "Interference With Access To Health Care

---

[1] In 2017, during the pendency of this litigation, Hillcrest Women's Health Center closed indefinitely, but Planned Parenthood remains open.

1

Facilities ("the Ordinance"), which makes it illegal to "knowingly congregate, patrol, picket or demonstrate in a zone extending 20 feet from any portion of an entrance to, exit from, or driveway of a health care facility." *See* Harrisburg, Pa. Mun. Code § 3-371 (2015), http://ecode360.com/13739606.

Plaintiffs' claims stem from one occasion on which the Ordinance was enforced against Reilly. At a two-day evidentiary hearing held before the court in 2017, Reilly testified that on July 2, 2014, shortly after she arrived at Planned Parenthood to sidewalk counsel women entering the facility, two police officers arrived on scene and one officer advised her that the Ordinance required her to stay 25 to 30 feet away from the entrances. (Doc. 69 at 336:11–337:20.) After Reilly moved to a location well outside the buffer zone, the officer instructed her more than once to continue moving farther away from the facility. (*Id.*; Doc 135-18.) Reilly testified that she became frustrated with the officer and left the area. (Doc. 69 at 336:22–37:3.) A police report taken from the incident describes Reilly's activities as "handing out literature and talking to clients coming into the office," and indicates that the officer verbally warned Reilly that she would be "cited if she violates the ordinance in the future." (Doc. 60-3.)  Reilly was never arrested or cited pursuant to the Ordinance. (Doc. 135 at ¶ 106; Doc. 153 at ¶ 106.)

In March 2016, Plaintiffs initiated this action and filed a complaint pursuant to 42 U.S.C. § 1983, alleging that the Ordinance is unconstitutional on its face and

as applied because it violates their First Amendment rights to free speech, free exercise, and free assembly, and their Fourteenth Amendment rights to equal protection and due process. (Doc. 1.) Plaintiffs also sought a preliminary injunction based on the alleged violation of their free speech rights. (Doc. 3.) Defendants opposed the preliminary injunction and moved to dismiss Plaintiffs' claims. (Docs. 15–16.) The court denied Plaintiffs' motion for a preliminary injunction and dismissed their equal protection, due process, and free exercise of religion claims. (Doc. 44, "*Reilly I*.") On appeal, the Third Circuit reversed the court's denial of a preliminary injunction and remanded for further consideration under the proper legal standard.[2] (Doc. 54-1, "*Reilly II*.") After conducting an evidentiary hearing and receiving supplemental briefing, the court again denied Plaintiffs' motion. (Doc. 111, "*Reilly III*.") The Third Circuit affirmed (Doc. 118-2, "*Reilly IV*"), and the Supreme Court subsequently denied Plaintiffs' petition for certiorari. (Doc. 121-1.) Without further developing the evidentiary record, Plaintiffs and the City filed cross motions for summary judgment, which have been fully briefed, and are ripe for review.

II. **STANDARD OF REVIEW**

---

[2] By that point, Defendants Harrisburg City Council and Mayor Papenfuse had been dismissed from the action, and one of the three original plaintiffs, Rosalie Gross, voluntarily dismissed her claims. (*Reilly I* at 25–27; Doc. 46.)

Federal Rule of Civil Procedure 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there

is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989)).

"The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). Denial of one motion does not necessitate a grant of the other, and the movants do not, by virtue of their cross motions, waive their right for the court to consider whether genuine issues of material fact exist. *Id.* (citing *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). If neither party carries its burden, the court must deny summary judgment. *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008).

### III. DISCUSSION

Both motions request summary judgment on Plaintiffs' remaining § 1983 claims, which allege that the Ordinance violates First Amendment free speech and

5

assembly rights, on its face and as applied.[3] Section 1983 provides citizens a civil cause of action for violations of their constitutional rights by persons acting under color of law. 42 U.S.C. § 1983. The distinction between facial and as-applied constitutional challenges "affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding breadth of the remedy," but the substantive rule of law is the same for both claims. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127–28 (2019) (internal quotation marks omitted).

### A. The City is entitled to summary judgment on Plaintiffs' claims that the Ordinance facially violates free speech and assembly rights.

In denying Plaintiffs' motion for a preliminary injunction, the court found that Plaintiffs' facial challenge to the Ordinance on free speech grounds was unlikely to succeed on the merits because, even though Plaintiffs demonstrated a burden on speech, the City met its burden to show that the Ordinance is content-neutral and narrowly tailored to achieve a legitimate government interest. (*Reilly III* at 38.) The Third Circuit affirmed that the Ordinance does not apply to sidewalk counseling, is not content-based or vague or overbroad, and is narrowly tailored to survive intermediate scrutiny. (*Reilly IV* at 9–11, 14.) The Third Circuit further observed that, as in *Bruni v. City of Pittsburgh*, 941 F.3d 73 (3d Cir. 2019), the Ordinance

---

[3] While Plaintiffs' motion also requests summary judgment on their free exercise claims, the court has already determined that the complaint failed to state a claim for violation of the free exercise clause (Doc. 44 at 24–25), notwithstanding a scrivener's error in the order denying dismissal. (*See* Doc. 45.) Count II will therefore be dismissed.

does not create a significant burden on speech, and the City showed through declarations, documentary evidence, and in-court testimony that the "restriction did not burden substantially more speech than … necessary to further the government's legitimate interests." (*Id.* at 15 n.12, citations omitted.)

A statute's facial constitutionality is a legal issue, and no disputed facts remain that would impact the Ordinance's facial constitutionality and require factfinding by a jury. *See Brown v. City of Pittsburgh*, 586 F.3d 263, 288, 296 n.41 (3d Cir. 2009) (deciding an ordinance's facial validity on the merits at the preliminary injunction stage as a matter of law). Presented with no additional evidence or argument to alter its prior conclusion, the court finds as a matter of law that the Ordinance is constitutional on its face and incorporates its prior analysis herein. (*Reilly III* at 17–38; *see also Reilly IV* at 9–16.) *See also Bruni*, 941 F.3d at 88–92 (affirming the facial constitutionality of a nearly identical ordinance). Accordingly, the City is entitled to summary judgment on Plaintiffs' claims challenging the facial constitutionality of the Ordinance.[4]

---

[4] The Ordinance does not facially violate Plaintiffs' constitutional right to free assembly for substantially the same reasons. *See De Jong v. State of Oregon*, 299 U.S. 353, 364 1937) ("The right of peaceable assembly is a right cognate to th[at] of free speech."); *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984) (applying free speech principles to analyze restrictions on a gathering on the National Mall); *Cty. of Butler v. Wolf*, 486 F. Supp. 3d 883, 905 (W.D. Pa. 2020) ("Although the right to peaceably assemble is not coterminous with the freedom of speech, they have been afforded nearly identical analysis by courts for nearly a century."). Interpreting nearly identical language in *Bruni*, the Third Circuit found that a prohibition on "congregating" does not restrict one-on-one conversations, and that a prohibition on "patrolling"

### B. The City is entitled to summary judgment on Plaintiffs' as-applied challenges based on free speech and assembly rights.

To succeed on a claim challenging the constitutionality of a statute's application, the Plaintiffs must show as a threshold matter "that the law has in fact been (or is sufficiently likely to be) unconstitutionally applied to [them]." *See McCullen v. Coakley*, 573 U.S. 464, 485 n.4 (2014). In turn, the government has the ultimate burden of justifying its restriction based on the applicable level of scrutiny. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, et al.*, 546 U.S. 418, 429 (2006). To impose liability on a municipality, Plaintiffs must demonstrate that it was the "moving force of the constitutional violation" through a custom, practice, or policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see Brown*, 586 F.3d at 294 n.38.

The City does not argue any justification for restricting peaceful one-on-one conversations and leafletting, and it is thus entitled to summary judgment only if no reasonable jury could find that Plaintiffs' constitutionality protected activities were restricted under the color of law, or if no reasonable jury could find municipal liability under *Monell*.

Plaintiffs' sidewalk counseling, to the extent it consists of peaceful one-on-one conversations and leafletting, is core political speech that merits the apex of

---

does not restrict people from walking alongside one another. *See Bruni*, 941 F.3d at 87. Here too, the Ordinance imposes a similarly limited and justified free assembly burden.

constitutional protection.[5] To show that their protected activity was restricted, Plaintiffs point to a single incident in which they allege the Ordinance was improperly enforced against Reilly and argue that the resulting fear of prosecution has chilled, and continues to chill, their speech.[6] (Doc. 154 at 10–12, 18–20.)

Even assuming that Plaintiffs' free speech was restricted, however, the City is nevertheless entitled to summary judgment because the record does not support a finding that the City was the moving force of the violation. Under § 1983, a municipality is not liable under a theory of *respondeat superior* for constitutional deprivations caused by its employees. *Monell*, 436 U.S. at 691. Rather, the plaintiffs must identify a municipal policy or custom to establish that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Bd. of Cty. Comm'rs v.*

---

[5] The Supreme Court has consistently affirmed that such speech must be protected. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995) ("[H]anding out leaflets in the advocacy of a politically controversial viewpoint [] is the essence of First Amendment expression."); *Meyer v. Grant*, 486 U.S. 414, 424 (1988) (characterizing "one-on-one communication" as "the most effective, fundamental, and perhaps economical avenue of political discourse"). "When the government makes it more difficult to engage in these modes of communication, it imposes an especially significant First Amendment burden." *McCullen*, 573 U.S. at 489. The court affirmed these core speech protections by interpreting the Ordinance narrowly to exclude sidewalk counseling as a matter of constitutional avoidance. (*See Reilly III* at 11 n.3, 20–21; *Reilly IV* at 9–10.) The City therefore cannot restrict Plaintiffs' engagement in these activities.

[6] Although Biter concedes that the Ordinance was not directly enforced against her, she alleges that it is sufficiently likely the Ordinance would be unconstitutionally applied to her, and as such, she has "voluntarily curbed her protected counseling to avoid citation" based on Reilly's July 2, 2014 encounter. (Doc. 154 at 19; Doc. 69 at 283:21–289:17, 304:22–312:7, 315:18–317:10, 333:4–334:1.)

*Brown*, 520 U.S. 397, 404 (1997)). Municipal custom is created when officials' practices are "so permanent and well settled" that they have the "force of law." *Monell*, 436 U.S. at 691. Municipal policy exists when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). The identified policy need not be in writing, but it must be "intended to, and [in fact], establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion). In essence, for a municipality to be liable, "a direct causal link between the municipal action and the deprivation of federal rights" must exist. *Bd. of Cty. Comm'rs*, 520 U.S. at 404.

Here, there is no evidence in the record of any relevant written or unwritten policy, other than the Ordinance itself, which is insufficient to impose liability given its facial constitutionality. *See Brown*, 586 F.3d at 292. The same is true with respect to custom, because even when viewing the facts in a light most favorable to

Plaintiffs, the evidence shows nothing more than a single ad-hoc enforcement action undertaken by an individual municipal employee who lacked policymaking authority. *See Porter v. City of Philadelphia*, 975 F.3d 374, 384–85 (3d Cir. 2020) (finding that a municipal attorney's "unendorsed actions, without more, did not become municipal policy or give rise to municipal liability under *Monell*").

Nothing in the record suggests that the City or any of its policymakers directed or encouraged officers to enforce the Ordinance as prohibiting sidewalk counseling. Not a single person was arrested or cited for violating the Ordinance in connection with sidewalk counseling, and there is no reason to believe any City policymaker knew or should have known that less formal enforcement against sidewalk counseling occurred. (*See e.g.*, Docs. 135-28, 135-29 (police incident reports showing that officers enforced the buffer zone against protestors, recognized their rights to protest outside the zone, and advised protestors not to trespass or harass clients and staff).)[7] Police Captain Moody's unrebutted testimony demonstrates that the City lacked a coordinated response to complaints about sidewalk counseling, and that the onus of interpreting and enforcing the Ordinance fell to individual officers and their immediate supervisors. (*See* Doc. 59-1 at 39:21–40:23, 89:2–91:12 (testifying that responding officers need to absorb all of the details necessary to

---

[7] The only police incident report that plausibly shows enforcement against peaceful sidewalk counseling activities is the July 2, 2014 incident involving Reilly. (Doc. 60-3).

11

determine whether the Ordinance is violated, and depending on the situation's complexity and the degree of discretion required, will consult a supervisor if available).) Any misapplication of the statute was therefore the product of discrete enforcement decisions by individual municipal employees rather than a "fixed plan[] of action" or a customary practice for which the City can be held liable. *See Pembaur*, 475 U.S. at 480–81.

Plaintiffs' arguments to the contrary lack merit, as they rely on the testimony of City representatives interpreting the Ordinance during litigation and alleged ratification by the City Solicitor.[8] The City officials' after-the-fact interpretations of the Ordinance, which were formulated in response to hypothetical enforcement scenarios and pursuant to the City's litigation strategy of defending the Ordinance's constitutionality, do not meaningfully support that a municipal policy prospectively

---

[8] Specifically, at the preliminary injunction hearing, City Solicitor Neil Grover testified that the Ordinance would prohibit a person from engaging clinic clients in quiet conversation within the buffer zone and that the prohibition on congregating would proscribe two people from conversing while walking side-by-side in the buffer zone. (Doc. 68 at 122:20–25; Doc. 69 at 355:1–13.) Similarly, City Police Captain Deric Moody testified that engaging in quiet conversation with a clinic client within the buffer zone would violate the Ordinance. (Doc. 150-2 at 19:16–20:23.) In appellate briefing and at oral argument, the City's counsel argued that the Ordinance would prohibit Plaintiffs from engaging in sidewalk counseling within the buffer zone, handing out leaflets discouraging people from entering the clinic, and standing or walking with clinic clients while conversing within the zone. (Doc. 134-1 at 52; Doc. 59-10 at 31:20–32:20; Doc. 134-2 at 25.) Furthermore, after a perceived slackening of Ordinance enforcement following the United States Supreme Court's *McCullen* decision finding Massachusetts's statewide clinic buffer zone to be unconstitutional, Solicitor Grover reviewed the City's Ordinance in 2016 and determined that officers "should continue to enforce it as they were" before 2015. (Doc. 68 at 100:18–101:17.) *See McCullen*, 573 U.S. at 496–97.

caused an unlawful restriction of speech.[9] Nor could the City Solicitor, without knowledge of improper enforcement of the Ordinance against sidewalk counseling, have ratified the practice. *See Wallace v. Powell*, No. 3:09-CV-0291, 2009 WL 6850318 (M.D. Pa. Nov. 20, 2009) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)) (ratification under *Monell* requires knowledge and approval of the subordinate's decision and the basis for it).

The evidence of a single officer enforcing the Ordinance against sidewalk counseling is not sufficient to support an inference that the City caused the officer's misapplication of the Ordinance. *Cf. McTernan v. City of York, PA*, 564 F.3d 636, 658–59 (3d Cir. 2009) (finding the plaintiff's allegations that officers violated his free speech did not raise an inference that city policymakers knew about or directed the conduct); *see also Porter*, 795 F.3d at 384–85 (finding no liability under *Monell* where the state actor who violated the plaintiff's free speech was not the final policymaker and there was no evidence that policymakers were aware of his conduct). Viewing all the evidence in a light most favorable to Plaintiffs and resolving all reasonable inferences in their favor, no reasonable jury could find that

---

[9] Plaintiffs cite to *Porter v. City of Philadelphia*, 975 F.3d 374 (3d Cir. 2020) to support the contrary. However, unlike in *Porter*, where the city representatives testified that a policy existed and therefore could have prospectively caused the free speech violation, Police Chief Moody and City Solicitor Grover were asked to interpret and apply the Ordinance to the hypotheticals posed by counsel during litigation. *Porter*, 975 F.3d at 383–84. As a matter of logic, their after-the-fact testimony concerning the City's interpretation does not support a finding that the City had a pre-existing policy that caused the violation.

the City had a policy that caused the alleged violation. Therefore, the City's motion for summary judgment will be granted.[10]

Finally, having determined that the record evidence is insufficient to support a finding that the City is liable for the alleged restriction of Plaintiffs' free speech and assembly rights, the court concludes there is no basis for granting summary judgment in Plaintiffs' favor, and their motion will be denied.

## IV. CONCLUSION

For these reasons, the court will grant Defendant's motion for summary judgment and deny Plaintiffs' motion for summary judgment. An appropriate order shall follow.

_s/ Sylvia H. Rambo_
SYLVIA H. RAMBO
United States District Judge

Dated: March 28, 2022

---

[10] Plaintiffs' failure to produce evidence sufficient to support a finding that the City is liable under *Monell* for their free speech claim is also fatal to their free assembly claim. Therefore, the court will also grant summary judgment to the City on Plaintiffs' as-applied free assembly claim.